RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000395-DGE

FINAL

DATE 10/18/18 Kim Redmon, DC

LAURA FAYE SMITH                                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2016-CA-001255-MR
JEFFERSON CIRCUIT COURT NO. 09-CI-502860

JIMMY HOWARD MCGILL JR.                                              APPELLEE

## OPINION OF THE COURT BY JUSTICE WRIGHT

### REVERSING AND REINSTATING

### I. BACKGROUND

Appellant, Laura Faye Smith, and Appellee, Jimmy Howard McGill, married in 1994 and divorced in 2005 in Arkansas. The Arkansas trial court awarded Laura with primary residential custody of their three children, with Jimmy having unsupervised visitation. Laura subsequently moved to Kentucky and filed the decree in Jefferson Family Court in 2009.[1] The parties' custody and support action has since been in that court. The matter currently

---

[1] The Kentucky and Arkansas judges teleconferenced regarding the proper jurisdiction for the case. Thereafter, the Arkansas judge allowed the parties to submit evidence before holding a hearing to determine whether it would exercise continuing, exclusive jurisdiction over the case. Both parties appeared at the hearing personally and by counsel. The Arkansas court declined "to exercise continuing, exclusive jurisdiction," as the "evidence necessary to support or disprove [Jimmy's] allegations exists in the State of Kentucky." The court went on to find that "the Children, who are located in Kentucky, should not be forced to Arkansas to hear these matters due to the necessary expense and potential disruption to the lives of the Children," and that "a more convenient forum exists" in Kentucky.

before the Court arose when Jimmy filed a motion to become the primary residential custodian of his and Laura's two youngest daughters (the oldest having already been emancipated). The Jefferson Family Court denied Jimmy's motion for primary custody in an order dated January 21, 2016.

After the trial court's January 21 order, Laura made a motion for attorney's fees. On June 3, 2016, the court ordered Jimmy to pay the full amount of Laura's attorney's fees, totaling $26,352.23. Jimmy moved the court to alter, amend or vacate both the January 21 order denying him primary residential custody and the June 3 order awarding Laura's attorney's fees. On August 12, 2016, the court denied Jimmy's motion to alter, amend, or vacate its January 21 custody order. However, the court amended the June 3 order awarding attorney's fees. Upon reviewing Laura's annual income of $41,900 and Jimmy's annual income of $32,500, the court found it improper to order Jimmy to pay Laura's full attorney's fees and reduced the amount to $10,000. Jimmy appealed this order to the Court of Appeals. The Court of Appeals affirmed the trial court's decision pertaining to the custody of the children and Jimmy did not appeal that ruling to this Court. However, the Court of Appeals reversed and remanded Laura's award of attorney's fees determining that no actual disparity existed between Laura's and Jimmy's income to justify an award of attorney's fees to Laura pursuant to KRS 403.220. The Court of Appeals held that the trial court is free to issue an order for attorney's fees pursuant to CR 37, if it believes it is necessary and if the record supports such

a measure. Laura asked this Court for discretionary review, which we granted. We now reverse the Court of Appeals.

## II. ANALYSIS

In its order granting Laura's motion for attorney's fees, the trial court cited KRS 403.220 and *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). Jimmy moved the court to alter, amend, or vacate its order awarding attorney's fees. In its order on Jimmy's motion, the trial court stated it was under the mistaken belief that Laura was not employed. Therefore, the court believed Laura had no income when it initially analyzed the parties' financial resources. The court then stated that Laura's annual income was actually $41,900 and Jimmy's annual income was $32,500. The order stated that "it was improper to order Respondent to pay Petitioner's full attorney's fee" and went on to quote *Gentry*, which states "many of the costs and fees were unnecessary in the sense that a good deal of the court's time and a substantial part of the costs and fees assessed could have been avoided by candor and cooperation." 798 S.W.2d at 936. Preceding the citation to *Gentry*, the court amended the award of attorney's fees to $10,000 as a more appropriate sum.

Laura asserts that "Jimmy, th[r]ough his actions, subjected not only Laura but also the Minor Children to litigation and an IFA [Issue Focused Assessment] all of which were very expensive . . . ." Laura contends that Jimmy behaved in such a way that would allow the court to sanction him through an award of attorney's fees.

3

In *Gentry*, the husband, Tom, argued that the trial court erred by awarding attorney's fees and costs to his wife, Kathy. This Court stated "[i]n this instance, financial inequality justifies the award, KRS 403.220. Tom's obstructive tactics and conduct, which multiplied the record and the proceedings, justify both the fact and the amount of the award." *Gentry*, 798 S.W.2d at 938. Further, "the circuit court found that a significant portion of the attorney's fees was incurred as a result of Tom Gentry's obstructive tactics and refusal to cooperate in the proceedings." *Id.* However, much of the discussion of attorney's fees in *Gentry* seems to be based primarily upon an award of expenses pursuant to CR 37.01, which deals with discovery. The Court of Appeals held that the present case should be remanded to the trial court to determine if attorney's fees were justified pursuant to CR 37; however, the parties' arguments are not based on discovery. Therefore, that rule has no applicability here.

Laura argues that the plain language of KRS 403.220 does not require a financial imbalance for an award of attorney's fees. She insists the statute merely requires the trial court to consider the financial resources of both parties in determining the reasonable amount for attorney's fees. Jimmy contends that the requisite factors did not exist for an award of attorney's fees. Further, he contends that case law prohibits the court from awarding attorney's fees based on KRS 403.220 without a finding of disparity of income. The Court of Appeals held that: "[a]s even *Gentry* holds, an actual disparity must exist before an award

4

based also upon a party's conduct can be made. No such disparity existed according to the evidence the trial court cited and relied upon for the award of attorney's fees to Laura." For the following reasons, we agree with Laura and hold that the trial court need not find a financial disparity before awarding attorney's fees—that it must only consider the financial resources of the parties.

For more than forty years, this Court has interpreted KRS 403.220 to require a disparity of income as the threshold requirement in awarding attorney's fees. For example, in *Sullivan v. Levin*, 555 S.W.2d 261, 263 (Ky. 1977), this Court stated "[i]n other words, the allowance is authorized by the statute [KRS 403.220] only when it is supported by an imbalance in the financial resources of the respective parties." In that case, the Sullivans divorced and reconciled, and the wife's attorney brought an action for his fees. The Court allowed the fees.

*Sullivan* was overruled by *Hale v. Hale*, 772 S.W.2d 628 (Ky. 1989), on the issue of whether attorney's fees could be paid directly to counsel. However, *Hale* upheld *Sullivan*'s interpretation requiring a financial imbalance in order for a court to award attorney's fees pursuant to KRS 403.220. This Court held "[t]he contention of the respondent is that KRS 403.220 is solely for the benefit of the client and not the attorney; that its purpose is simply to permit recovery of a part or all of the expenses incurred in a divorce case by a party suffering from an unfavorable financial imbalance." *Id.* at 629.

5

This interpretation was further upheld in *Bishir v. Bishir*, 698 S.W.2d 823, 826 (Ky. 1985). In *Bishir*, the wife was awarded attorney's fees for post-judgment proceedings. This Court held that there were sufficient findings in the record to support the award of the fee. We stated "KRS 403.220 permits a court to order a party to pay the adverse party's attorney's fees 'after considering the financial resources of both parties.' Such an order is appropriate 'only when it is supported by an imbalance in the financial resources of the respective parties.'" *Id.* (citing *Sullivan*, 555 S.W.2d at 263).

More recently, in *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 519 (Ky. 2001) this Court held "KRS 403.220 authorizes a trial court to order one party to a divorce action to pay a 'reasonable amount' for the attorney's fees of the other party, but only if there exists a disparity in the relative financial resources of the parties in favor of the payor." *Id.* (citing *Sullivan*, 555 S.W.2d at 263).

As detailed above, this interpretation has long stood in this Court. However, we will no longer read a requirement into the statute that is not found within its plain language. It is the job of this Court to neither make law nor set policy—and that is what these prior opinions accomplished by adding to the unambiguous words of the legislature. "In a democracy, the power to make the law rests with those chosen by the people. [A court's] role is more confined—'to say what the law is.'" *King v. Burwell*, 135 S. Ct. 2480, 2496 (2015)(citing *Marbury v. Madison*,

6

5 U.S. 137, 176 (1803)). We guard against overstepping those bounds—and correct any past infractions when we revisit them. Therefore, today we overrule this line of cases insofar as they require a financial disparity in order for attorney's fees to be awarded and return to the plain language of the statute. That language requires only that the trial court consider the financial resources of the parties before awarding attorney's fees—not that a financial disparity exist.

When a statute is plain and unambiguous, we need look no further than the statutory language in interpreting it. *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14 (Ky. 1985) ("An unambiguous statute is to be applied without resort to any outside aids."). "This Court has repeatedly held that statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002).

KRS 403.220 reads:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The statutory language here is plain: after a trial court considers the parties' financial resources, it may order one party to pay a reasonable amount of the other party's attorney's fees. The statute does not require that a financial

7

disparity must exist in order for the trial court to do so; rather, that language is a creature of case law born out of this Court's decisions—and today, we slay this forty-year-old dragon hatched from precedent.

While financial disparity is no longer a threshold requirement which must be met in order for a trial court to award attorney's fees, we note that the financial disparity is still a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture. Here, the trial court did just what the statute directs—it considered the financial resources of the parties. Admittedly, the court was erroneous in its first consideration, as it believed Laura was unemployed when it made its initial ruling awarding her attorney's fees. However, the trial court corrected this error when it amended that order to award Laura only $10,000 in fees. In its second order, the trial court specifically discussed and listed the parties' incomes.

Because the trial court followed the dictates of the statute, it did not err in its award of attorney's fees. We agree with the portion of *Gentry* which holds, "[t]he amount of an award of attorney's fees is committed to the sound discretion of the trial court with good reason. That court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." 798 S.W.2d at 938. The trial court was certainly in the best decision to observe the lack of candor and cooperation which led to the accrual of many of the fees in this case—which it noted in its order.

8

Because the trial court acted within its discretion when assessing attorney's fees against Jimmy after considering the parties' financial resources, we reverse the Court of Appeals and reinstate the trial court's judgment.

### III. CONCLUSION

For the foregoing reasons, we overrule the above cited line of cases requiring trial courts to find a financial disparity before awarding attorney's fees, reverse the Court of Appeals, and reinstate the judgment of the Jefferson Family Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Louis Irwin Waterman
Goldberg Simpson, LLC

Allison Spencer Russell
Goldberg Simpson LLC

Megan Keane
Goldberg Simpson LLC

COUNSEL FOR APPELLEE:

Michael Richard Slaughter
Westport, KY