RENDERED: MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1918-MR

DANIEL DEKALB                                                                APPELLANT

v.           APPEAL FROM OLDHAM FAMILY COURT
HONORABLE DOREEN S. GOODWIN, JUDGE
ACTION NO. 15-CI-00498

KELLY DEKALB                                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Daniel Dekalb ("Dan") appeals from an Oldham Family

Court judgment denying his motion to modify child support and maintenance,

finding him in contempt for failure to pay in full court-ordered obligations and

ordering him to pay part of Kelly Dekalb's ("Kelly") attorney fees, and denying his

request to allocate to him a tax exemption for at least one of the parties' two

children. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Dan and Kelly Dekalb were married in Colorado in 2006. They relocated to Kentucky in 2013 and have two children. Dan and Kelly separated in 2015 and divorced in 2017. With the family court's permission, Kelly and the two children moved to Colorado in 2017. Kelly returned to work shortly after the move, after several years' absence from the workforce.

Dan raised several alleged errors in an earlier appeal, including challenging his child support and maintenance obligations. We affirmed the family court's judgment in an unpublished opinion. *Dekalb v. Dekalb*, No. 2018-CA-0513-MR, 2020 WL 1074798 (Ky. App. Mar. 6, 2020).

While the prior appeal was pending, Dan filed a motion to modify maintenance and child support. Kelly filed a motion to hold Dan in contempt for failing to make full payment on his court-ordered obligations and a motion for attorney fees. Dan requested that he be allocated a tax exemption for one child. Also, Dan disputed the amount of Kelly's earnings and her need for full-time childcare. The parties also disputed how to pay for travel expenses so the children could spend time with Dan.

Following a July 2018 evidentiary hearing, the family court ultimately denied Dan's requests to modify maintenance and child support and to be allocated a tax exemption for one child. It further found Dan to be in contempt for failure to

pay in full court-ordered obligations on several occasions and ordered him to pay

Kelly's attorney fees in the amount of $7500 within sixty days. Dan filed a timely

appeal. Further facts will be provided as we address each issue in turn.

## STANDARD OF REVIEW AND ANALYSIS

*Denial of Modification of Maintenance*

Kentucky Revised Statutes (KRS) 403.250(1) states that "the

provisions of any decree respecting maintenance may be modified only upon a

showing of changed circumstances so substantial and continuing as to make the

terms unconscionable." We review a family court's ruling on a motion to modify

maintenance under an abuse of discretion standard. *Tudor v. Tudor*, 399 S.W.3d

791, 793 (Ky. App. 2013).

The family court found that Dan's income had not significantly

changed since the time of trial, remaining at about $22,000 per month. It noted

that it had imputed $30,000 annual income to Kelly when initially awarding child

support and maintenance. It found that her present annual income would be about

$37,750 based on the pay stubs she submitted for the first six months of the year.

The family court also found that Kelly's living expenses had increased and that

Dan earned seven times what Kelly earned.

The family court rejected Dan's arguments that the family court

should impute additional income to Kelly:

-3-

The Respondent [Dan] argued that the Petitioner [Kelly] is not working full time and the Court should impute full-time earnings to her for the purposes of this Motion. This Court heard no evidence to support that theory. In addition, he attempts to calculate her earnings by equating her per unit measure of payment to an hourly amount. The Court does not find his calculation to be accurate to her income.

The Petitioner is a physical therapist who works in the home-health setting. That is the same type of work that the Petitioner did as a physical therapist earlier in the marriage. The Petitioner explained how patients are assigned to her and that she took all patients assigned except for the rare occasion when a patient lived too far away. The Petitioner also explained to the Court that for every "unit" showing on her pay stub was a home-health visit. For that one unit, the Petitioner typically would work approximately three hours—sometimes less, sometimes more—depending on the circumstances. Specifically, the "unit" included the travel time to and from the patient's home, typically 30 minutes each way, and the time for the visit, approximately one hour. The "unit" also included the time the Petitioner was required to write reports and communicate with the doctors.

There was no evidence presented that the Petitioner could work a 40-hour week in another physical therapy setting. The Petitioner is earning slightly in excess of what the Court imputed to her at the trial [sic] of trial. There is no evidence to support imputed income above the approximately $37,000 which the Petitioner is likely to earn in 2018.

(Order 11/20/2019, pp. 5-6).

Dan argues that Kelly could work additional hours if she chose and so additional income should be imputed. He suggests that Kelly chose to work less

-4-

hours after he filed a motion to modify and argues that her annual earnings should have been based on one particular paystub which he alleges shows she was capable of greater earnings. He also argues that even assuming that a unit of work takes 2.5 or 3 hours, Kelly's per-hour pay would greatly exceed the per-hour pay based on the $30,000 annual income imputed by the family court. And he points out that $37,750 is twenty-five percent more than the $30,000 annual income imputed.

From our review of the recorded hearing, the family court accurately summarized Kelly's testimony about her work hours and how she was paid. And given Kelly's testimony about her lack of regular work hours being outside her control, we perceive no error in the family court's basing Kelly's average annual earnings on a later paystub reflecting her earnings to date in mid-2018 rather than an isolated, earlier paystub suggesting higher weekly earnings during a shorter time period.

From our review of the recorded hearing, Kelly also testified to looking for facility-based physical therapy work with more regular hours but being unable to find this type of work, especially after a seven-year absence from the workforce. Dan has not pointed to evidence of record that Kelly could work more hours or could find a more lucrative job or one with more regular hours. Thus, we see no error in the family court's declining to impute additional income to Kelly.

Although Kelly's projected annual income was about twenty-five percent higher than the $30,000 annual income imputed to her by the family court, we discern no abuse of discretion in the family court's denial of Dan's motion to modify maintenance. The family court found that Kelly's earning about $7,550 more per year than imputed was "not a substantial and continuing change of circumstances" and "not enough income to render the maintenance unconscionable." Further, the family court noted that it had acknowledged in its order initially awarding maintenance that Kelly would experience a monthly shortfall of over $800 a month based on her living expenses, but that she could "bridge the gap from the shortfall by either spending some of the marital estate she was awarded or earning additional money."

Given that the family court had initially expected Kelly to have a shortfall of over $800 per month even with a $3,500 monthly maintenance award and $30,000 of imputed income, we perceive no abuse of discretion in the family court's denying Dan's motion to modify maintenance, especially given the evidence of Kelly's increased living expenses and Dan's income remaining approximately seven times Kelly's. We further note that the maintenance obligation established in December 2017 was for a term of forty-two months, so presumably this maintenance obligation will terminate around June or July 2021.

In short, there was no reversible error in the family court's denial of Dan's motion to modify maintenance.

*Denial of Modification of Child Support*

We review a family court's ruling on a motion to modify child support under an abuse of discretion standard. *Moskovitz v. Moskovitz*, 459 S.W.3d 886, 888 (Ky. App. 2015). In ruling on a motion to modify child support, the family court must apply the standard set forth in KRS 403.213(1), which provides in pertinent part: "The provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing."

The family court issued an order in May 2019 concerning child support and allocating responsibility between the parties for expenses relating to travel and childcare. But it did not rule on other issues discussed at the July 2018 hearing such as maintenance and tax exemptions.

In its May 2019 order, the family court found that Dan earned about $22,000 per month from his job and Kelly earned, on average, $2,859 per month from her job. Taking into account the monthly maintenance award, the family court found Dan's adjusted monthly income to be $18,320 and Kelly's adjusted monthly income to be $6,359.00. The family court noted that their combined

monthly income exceeded the combined monthly income in the Kentucky Child Support Guidelines. It found that "each parties' percentage of the combined income only changed by two (2) percentage points" from its finding in the December 2017 order setting forth the initial child support obligation. So, it denied the motion to modify child support.

Although it denied the motion to modify child support, the family court stated in this same order that it was reducing Dan's monthly child support obligation by $150 due to travel expenses incurred:

> With respect to travel expenses incurred through exchange of the children for the purposes of parenting time, the Court finds Respondent [Dan] failed to timely submit proof of his travel expenses, per the Court's order. Nevertheless, the Court previously indicated it would be addressed due to the Petitioner's [Kelly's] Court-approved relocation. A review of the expenses later submitted, via Respondent's Exhibit # 5, reflects expenditures of $7,055.00 over an approximate one-year period, or $590.00 per month. Based upon the income of the parties, the Court orders Petitioner shall be responsible for 25% of the Respondent's travel expenses and Respondent shall be responsible for 75%. The Court finds 25% of the average monthly travel expenses is approximately $150.00. Therefore, the Court reduces the Respondent's monthly child support obligation by $150.00, for a total net obligation of $1,950.00, payable to Petitioner.

(Order 5/17/2019, p. 3). The family court also ordered that Dan pay 76% of work-related childcare costs and Kelly to pay 24% based on their respective incomes,

after rejecting his arguments that Kelly did not need full-time childcare or should only utilize family for childcare.

Following this May 2019 order, both parties filed motions to alter, amend, or vacate. Kelly requested that instead of reducing Dan's child support obligation by $150 per month, the family court amend its order to provide that Kelly reimburse Dan for 25% of his travel expenses for visiting with the children upon proper proof of his expense.

In its November 2019 order resolving remaining issues, the family court denied the motion to modify child support and denied the motion for a reduction of Dan's child support for travel expenses. Instead, the family court agreed with Kelly that Kelly should reimburse Dan for "25% of travel expenses for the children upon submission of proof by him."

Dan correctly argues that Kelly's earnings ($37,750 annually based on pay stubs for first half of 2018) were about twenty-five percent higher than the income initially imputed to her by the family court ($30,000). Nonetheless, the family court determined that a substantial and continuing change of circumstances had not occurred, so it denied his motion to modify child support. Under the specific facts and circumstances of this case, we discern no abuse of discretion in the family court's denial of the motion to modify child support. As the family court noted in its May 2019 order, the parties' combined monthly income was

outside the Guidelines and Kelly's annual earnings exceeding the income imputed to her by $7,500 only caused a two percentage-point change in each parties' share of their combined monthly income. We therefore discern no reversible error in the family court's denying child support modification.

*Contempt*

We review a family court's exercise of its contempt power for abuse of discretion, but we review its underlying factual findings for clear error. *Nienaber v. Commonwealth ex rel. Mercer*, 594 S.W.3d 232, 235 (Ky. App. 2020). "Contempt is defined as the willful disobedience of or the open disrespect for the court's orders or its rules" and can be either civil or criminal. *Id.* at 235 (internal quotation marks and citation omitted).

The family court found Dan to be in contempt, as he had paid significantly less than his full child support and maintenance obligation for a few months. Specifically, it found he incurred arrearages of over $2,000 per month for child support and maintenance for three months (January, February and March 2018). The family court rejected Dan's assertion that he lacked the funds to pay the full amounts ordered until he received a $68,000 net bonus in March 2018, specifically finding that Dan's "claim of insufficient funds is not credible."

The family court found that Dan "had hundreds of thousands of dollars at his disposal from which to pay his court-ordered obligations." It found

-10-

that he admitted to withdrawing over $46,000 from a joint bank account in December 2017, had over $400,000 in yearly income, and that his share of a marital investment account, Restricted Stock Units (RSUs) and Options had been valued at $642,000. Furthermore, the family court noted that Dan failed to pay in full his monthly child support and maintenance obligations and did not pay prior arrearages in March 2018—the month he received his $68,000 bonus. Therefore, it concluded his "underpayment of his obligations had nothing to do with the funds available to him . . . ."

The family court also found that Dan had violated another order by only paying his share for one week of childcare from November 2017 through July 2018, and it calculated that he owed over $5,000 for childcare expenses. It also found that he failed to comply with orders to file affidavits about travel expenses and that he failed to sign a form transferring half of a marital investment account to Kelly until she filed a motion to compel. So, in addition to not fully complying with the family court's child support and maintenance orders, the family court found that Dan failed to follow three other court orders.

Dan has not denied that he failed to comply with several court orders, although he contends he "did not willfully disobey the family court's orders." He points out that he "paid well over half of his child support and maintenance obligations following receipt of the December 2017 order" and the full amount of

his monthly obligations after receiving his March 2018 bonus. But he does not address his failure to pay arrearages after receiving his bonus.

Dan argues the family court failed to consider his payment to the IRS ($17,000 for 2017 taxes according to his testimony at the hearing) and his other post-divorce expenses. He claims that testimony and documentary evidence showed his monthly expenses exceeded his monthly income by over $1,000. From our review of his expenses claimed, however, he claimed monthly expenses including $500 for entertainment, $125 for sports and other hobbies, and $400 for clothes. So, the family court could have implicitly and reasonably concluded that some of his expenses were unnecessary or inflated.

He also claims that he had not received documentation that childcare incurred by Kelly was work-related. However, the family court found that Dan first inquired about work-relatedness of childcare only a few weeks before the July 2018 hearing—after failing to reimburse Kelly for childcare for several months despite her notifying him of childcare expenses each month by email. This is supported by substantial evidence—the parties' emails in the record. Furthermore, from our review of the record, we see no error in the family court's concluding that the childcare was a necessary, work-related expense.

Dan also complains he was treated unfairly as he was found in contempt for not complying with court orders, while Kelly was not subjected to a

contempt finding for failing to have complied with a court order to transfer $12,000 to Dan from an Ally account prior to the July 2018 hearing. The family court stated in the November 2019 order that it "is under the belief and understanding that the Petitioner [Kelly] had not transferred the Respondent his share of the Ally account, but rather the parties were waiting for an order to determine offsets of who owes what to whom." Dan argues the family court abused its discretion by believing Kelly would follow the court's order upon resolution of pending motions, but not affording him the same leniency.

Regardless of any non-compliance with a court order by Kelly,[1] there was ample evidence in the record that Dan had repeatedly failed to comply with court orders—including something as simple as filing affidavits of travel expenses. As for his contention that he could not afford to pay the full amount of maintenance and child support, the family court's finding that his non-payment was not based on the funds available is not clearly erroneous given potentially unnecessary or inflated expenses claimed, his failure to fully pay off arrearages even after receiving his bonus, and evidence regarding his income and assets. And we must give due regard to the family court's unique ability to judge the credibility

---

[1] We in no way condone failure to comply with a court order by any party and are unaware of whether Kelly complied with the family court's order to transfer funds from the Ally account to Dan after the July 2018 hearing. But whether Kelly should have been subjected to further consequences for not complying with a family court order is simply not before us.

of the witnesses under Kentucky Rules of Civil Procedure (CR) 52.01. In short, upon full review of the record and under the unique facts and circumstances of this case, we conclude that the family court did not abuse its discretion or otherwise err in finding Dan to be in contempt for non-compliance with court orders.

*Attorney Fees*

The family court's award of attorney fees is reviewed under the abuse of discretion standard. *Allison v. Allison*, 246 S.W.3d 898, 909 (Ky. App. 2008).

The family court found that Dan "has not presented a valid reason to [the] Court for his failure to pay" his court-ordered obligations. It noted his receipt of his bonus and availability of other funds and his seeking a reduction in his court-ordered obligations "despite a showing that each party is substantially in the same financial position as during the original hearing." So, it ordered Dan to pay Kelly's attorney fees in the amount of $7,500 within sixty days to "accommodate" her based on "statutory provisions" discussed in its order and on Dan's "contemptuous behavior[.]"

The family court ordered Dan to pay $7,500 of Kelly's attorney fees. Kelly had submitted an affidavit from her attorney showing that Kelly had incurred $11,575 in attorney fees during the early months of 2018.

Dan argues that the family court failed to consider all of Kelly's financial resources such as the assets she retained,[2] instead focusing solely on the disparity in the parties' incomes. Recently, the Kentucky Supreme Court made clear that a finding of financial disparity was not necessary for an award of attorney fees under KRS 403.220; this statute only required consideration of the parties' resources. *See Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. App. 2018). We note that the *McGill* decision was rendered in September 2018, between the July 2018 evidentiary hearing and the family court's 2019 order ruling on attorney fees.

*McGill* recognized that financial disparity was still a valid consideration when ruling on a request for attorney fees. *Id.* at 556. The factual discussion in *McGill* about the parties' financial resources concerned only the parties' incomes and did not consider what assets each retained. *See id*. at 556. Here, given the significant disparity in income (which is clearly a proper consideration under *McGill*) and Dan's failure to comply with court orders, we perceive no abuse of discretion in the family court's ordering Dan to pay $7,500 of Kelly's attorney fees under the facts of this case. *See id.* at 556 (quoting with approval *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990) ("[t]he amount of an

[2] The only evidence Dan points to of the assets retained by Kelly is his testimony about what she held in various accounts and RSUs. From our review of Kelly's testimony, Kelly disputed having as much in accounts as Dan claimed, however.

award of attorney's fees is committed to the sound discretion of the [family] court with good reason. That court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.")).

In short, under the unique facts and circumstances of this case, we find no reversible error in the family court's ordering Dan to pay $7,500 of Kelly's attorney fees.

*Denial of Tax Exemption Allocation*

As we recently recognized, "our Supreme Court cautioned that the allocation of a federal tax exemption is not a matter solely within the discretion of the [family] court but is subject to Internal Revenue Code and accompanying regulations." *Keith v. Keith*, 556 S.W.3d 10, 16 (Ky. App. 2018) (citing *Adams-Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767, 781-82 (Ky. 2015)). Thus, to properly award the exemption to a parent who does not qualify for the exemption under the Internal Revenue Code (such as a non-custodial parent), a family court must articulate sound reasons why so ordering the allocation actually benefits the child in terms of receiving financial support. *Smyrichinsky*, 467 S.W.3d at 784. But generally, we have long recognized that the family court has "broad discretion" in allocating the exemption, *Marksberry v. Riley*, 889 S.W.2d 47, 48

-16-

(Ky. App. 1994), with the goal of "maximiz[ing] the amount available for the care of the children." *Hart v. Hart*, 774 S.W.2d 455, 457 (Ky. App. 1989).

While we review the family court's decision about allocating the exemption for an abuse of discretion keeping in mind the ultimate goal of benefitting the children, we review its underlying factual findings under the more deferential "clearly erroneous" standard. *See* CR 52.01 ("Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the family court to judge the credibility of the witnesses.").

The family court noted Dan's request to allocate tax exemptions for the two children evenly between the parties. The family court discussed the requirements of *Smyrichinsky* regarding the allocation of tax exemptions in its order. The court specifically quoted the statement in *Smyrichinsky* that: "giving the tax exemption to the parent with the highest income in no way proves that the tax relief generated from the exemption inures to the child's benefit." *Smyrichinsky*, 467 S.W.3d at 783.

The family court then found that Dan "did not present any evidence showing what tax benefit he would receive from the award of the dependency exemption" and that he "failed to present any evidence that any tax savings to him would benefit the children." The court also noted Kelly's argument that in light of Dan's failure to pay court-ordered obligations to benefit the children, even if Dan

-17-

reaped a financial benefit from being allocated an exemption, "that financial benefit would not inure to the benefit of the children."

Dan disputes the family court's findings that he failed to present evidence of tax benefit to him and that he failed to present evidence that any tax benefit would benefit the children. He points to his testimony that he claimed the exemption for one child in the 2017 tax year and that a court order allowing him to claim the exemption for at least one child in the future would "help offset the burden of travel for the children and assist him with paying a disproportionate amount of taxes due to his income."

Kelly contends, however, that "Dan did not present any evidence regarding the benefit of the child tax exemption and how allocation of the exemption to Dan would benefit the children." Dan filed no reply brief. So, he did not respond to Kelly's assertion of lack of evidence that allocating a tax exemption to Dan would result in benefit to the children.

Dan states in his brief that *Smyrichinsky* requires "sound reasons why this award actually serves as a support issue benefitting the child." But we note that this requirement of articulating sound reasons concerning how an award of an exemption "serves as a support issue benefitting the child" applies to "the award of a tax exemption to a party who does not qualify for it under the Internal Revenue

Code." *Id.* at 784. But the family court here did not allocate the tax exemption to a party who did not qualify for it under the Internal Revenue Code.

Instead, in denying Dan's request to have a dependent-child tax exemption allocated to him, the family court essentially allowed Kelly to claim the exemption for both children. There appears to be no dispute that the children live primarily with Kelly such that she qualifies for the exemption. *See* 26 United States Code (U.S.C.) § 152(e) (generally recognizing that custodial parent receives the dependent child exemption unless certain requirements are met for non-custodial parent to claim the exemption); 26 Code of Federal Regulations (C.F.R.) § 1.152-4 (d) ("The custodial parent is the parent with whom the child resides for the greater number of nights during the calendar year, and the noncustodial parent is the parent who is not the custodial parent.").

Dan appears to argue that the family court failed to set forth sound reasons for denying him allocation of a tax exemption and that finding him to have presented no evidence of benefit to him or the children was in error. Based on our review of the record, we discern no clear error in the family court's factual findings and find no abuse of discretion in the court denying his request to be allocated a tax exemption for at least one child.

From our review of the recorded hearing, Dan testified only to his general perception that being allowed to claim a tax exemption for at least one

child would help him to offset high taxes due to recent increases in his taxable income and would help him to have more money generally available for travel.  He presented no specific proof about how his tax obligations would be affected by being allocated a tax exemption.  And from our review of the cited portion of his testimony from the July 2018 hearing on this issue, he did not offer any testimony about how any tax savings would actually benefit his children.

Though not discussed by the parties in their briefs, we also note from our review of the recorded July 2018 hearing that Dan's counsel indicated that the same issue about tax exemptions had been presented in the then-pending prior appeal.  Dan had argued in the prior appeal that the family court erred in failing to allocate a dependent child tax exemption to him, and his counsel expressed a desire not to repeat testimony which had been presented at the 2017 divorce trial.

Our earlier opinion declined to review Dan's assertion that he should have been allocated a tax exemption because Dan failed to show how he had preserved this issue for appeal.  *Dekalb*, 2020 WL 1074798 at *4.  In the present appeal, Dan cited to the record in his brief to show where he requested allocation of at least one dependent-child tax exemption to him.  But concerning the evidence presented, he cites only a portion of his testimony at the July 2018 hearing.  His cited testimony at this hearing consisted only of a generalized assertion of his perception that his tax burden would be decreased if he were allocated an

exemption so that he would have more money available for travel expenses. Since Dan fails to cite any evidence of record about potential tax savings benefitting the children, we cannot find fault with the family court's finding that he failed to present evidence that any tax savings from the exemption would benefit the children. As for any error in stating that he failed to present any evidence of benefit to himself, any error was harmless under CR 61.01.

Given the deference which must be accorded to the family court's ability to judge the credibility of witnesses under CR 52.01 and Dan's failure to specifically address how any tax savings to him would benefit his children in his cited testimony, we discern no abuse of discretion in the family court's denial of his request for allocation of a tax exemption. Furthermore, the family court's finding that Dan failed to fully comply with his child support obligation despite his high income and his having access to hundreds of thousands of dollars in the contempt portion of its order provides further support for its denial of his request for allocation of an exemption. And based on this finding, the family court would not necessarily be remiss if it implicitly concluded that the children would benefit most from Kelly receiving any tax savings from the exemptions in order to have funds available to meet the children's needs.

Thus, in short, we discern no error in the family court's denial of Dan's request to be allocated at least one dependent-child tax exemption.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Oldham Family Court. Any arguments or issues raised by the parties in their briefs which we have not discussed in this Opinion have been determined to be of no merit or relevancy to this appeal.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
| --- | --- |
| Justin R. Key<br>Jeffersonville, Indiana | Melanie Straw-Boone<br>Louisville, Kentucky |