RENDERED: FEBRUARY 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0395-MR

THOMAS DUNCAN MILLER          APPELLANT

v.      APPEAL FROM KENTON CIRCUIT COURT
HONORABLE THOMAS A. RAUF, JUDGE
ACTION NO. 22-CI-01504

MARIA DENISE REID          APPELLEE

OPINION
AFFIRMING IN PART,
VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

COMBS, JUDGE: Thomas Duncan Miller appeals the judgment of the Kenton

Family Court entered upon the dissolution of his marriage to Maria Denise Reid.

Miller contends that the court erred by failing to value marital property and by

assigning debt to him. He also argues that the court erred by failing to conclude

that Reid dissipated marital assets and by failing to award him attorney's fees.

Finally, Miller argues that the court erred by failing to make necessary findings of

fact. Following our review, we affirm in part, vacate in part, and remand for additional proceedings.

Miller and Reid were married in September 2016; Miller filed the dissolution action in October 2022. No children were born of the marriage. After a period of discovery, a trial date was set for September 22, 2023. Two weeks before trial, Miller requested a continuance to allow more time for discovery related to the valuation of Reid's interest in Axia Women's Health, the organization for which she works as an OB/GYN. The motion was granted. Shortly before the second scheduled trial date, Miller filed another motion for a continuance -- again seeking additional time to obtain an expert's opinion with respect to the value of Axia Women's Health. However, this motion was denied.

Following trial, the family court entered a decree of dissolution on December 28, 2023. The court assigned nonmarital property to each party; divided the couple's real and personal property evenly between them; and assigned debt to each of them. However, the court did not arrive at a valuation of Reid's interest in Axia Women's Health, nor did it provide the means by which the value of the stock in the closely held business organization would be distributed between the parties. The court declined to award Miller maintenance; and, after considering each party's financial resources, it concluded that Miller did not require assistance from Reid to pay his attorney's fees.

Miller filed a motion to alter, amend, or vacate the court's findings of fact and conclusions of law. An order granting the motion, in part, was entered in March 2024. The family court's order was amended to include an equal division of employment bonuses earned by Reid in 2022 and 2023 and of tax refunds for those years. The court also ordered references to the statements of Reid's therapist be stricken as hearsay. This appeal followed.

At the threshold of our analysis, we must determine whether the family court erred by failing to assign a value to Reid's ownership interest in Axia Women's Health and by denying Miller's subsequent motion for adequate findings of fact. The family court's conclusion as to the adequacy of its findings presents a question of law. Consequently, we do not defer to its determination. *McKinney v. McKinney*, 257 S.W.3d 130, 134 (Ky. App. 2008). After our review, we conclude that the family court erred by omitting a finding as to the value of Reid's interest in Axia Women's Health -- a matter that is essential to the judgment.

The provisions of KRS[1] 403.190 direct a family court to consider all relevant factors in deciding how to divide property equitably between the parties. It requires the court to consider the contribution of each spouse to the acquisition of marital property, including a spouse's role as manager of the household; the

---

[1] Kentucky Revised Statutes.

duration of the marriage; and the economic circumstances of each spouse after the division of the property is accomplished. *Id.* It also requires the court to consider specifically the value of property set apart to each spouse. *Id.*

In *Gaskill v. Robbins*, 282 S.W.3d 306 (Ky. 2009), the Supreme Court of Kentucky considered valuation of businesses: *i.e.*, how a trial court could value the goodwill of a going concern. In *Gaskill*, the Court remanded the case to the trial court for an assessment of the value of Gaskill's business. It acknowledged that valuation of a business is complicated, subjective, and, often, even speculative. Nevertheless, the Court held that "when a business is established during a marriage and is thus marital property, the trial court is **required** to fix a value and divide it between the spouses." *Gaskill*, 282 S.W.3d at 311 (emphasis added). The court noted that the trial court must hear factual evidence, generally including expert testimony. It concluded that where a trial court is required to find the fair market value of a business, it must have the means to determine the value of the business's earnings over time: its assets, its accounts receivable, and its liabilities.

Pursuant to our Supreme Court's holding in *Gaskill* and the specific provisions of KRS 403.190, we conclude that the family court is required to determine the value of Reid's interest in Axia Women's Health and to devise a means by which that value can be divided between the parties. Consequently, we

must remand the matter to the family court for further findings of fact and for the statutorily required valuation.

In conjunction with this issue, we note that a family court may exercise its discretion to order a party to pay a reasonable amount for the cost to the other party of maintaining a dissolution action. Therefore, we direct the court on remand to reconsider its decision with respect to Miller's request for attorney's fees. We are not determining that the family court abused its discretion by declining to order Reid to pay any part of Miller's attorney's fees. We are merely directing that the issue be revisited (pursuant to the requirements of KRS 403.190) once the financial resources of both parties are finally established.

With those issues decided, we turn now to consider Miller's contention that the family court erred by failing to divide between the parties the value of two savings accounts held at Fifth Third Bank for the benefit of their nieces. These accounts had been established by Reid prior to the parties' marriage. Additional sums were deposited into the accounts by the parties over the course of their marriage, and Reid continued to deposit funds into these accounts for the benefit of the nieces after the separation. The family court rejected Miller's contention that the value of these gifts should be marshalled back into the marital estate and divided between the parties.

On appeal, Miller claims that the family court erred by failing to divide the value of the accounts between the parties. Resolution of this issue is best considered as part of our analysis of Miller's other argument that the family court erred by rejecting his contention that Reid dissipated marital assets.

Parties are free to utilize or dispose of marital assets as they see fit. *Ensor v. Ensor*, 431 S.W.3d 462, 472 (Ky. App. 2013). However, where the court determines that the disposition of marital funds or assets was fraudulent or was intended to impair the other spouse's interest in the property, the value of the funds or assets can be considered part of the marital estate subject to equitable division. *Id.*

Gifts to family members can be regarded as dissipative of the marital estate. *Kleet v. Kleet*, 264 S.W.3d 610, 617 (Ky. App. 2007) (citing *Robinette v. Robinette*, 736 S.W.2d 351 (Ky. App. 1987)). A party is said to have dissipated or wasted marital assets where the property is disposed of (1) during a period when there is a separation or dissolution impending, and (2) where there is a clear showing of intent to deprive one's spouse of his or her proportionate share of the marital property. *Brosick v. Brosick*, 974 S.W.2d 498, 500 (Ky. App. 1998).

Dissipation must be demonstrated by a preponderance of the evidence, and the family court's findings of fact are upheld if supported by substantial evidence. *See Bratcher v. Bratcher*, 26 S.W.3d 797 (Ky. App. 2000). As

factfinder, the family court has sole authority to assess the credibility of witnesses. *Duffy v. Duffy*, 540 S.W.3d 821, 828-29 (Ky. App. 2018).

In light of evidence presented, the family court found that Miller was well aware of the nature of the college fund accounts established by Reid -- as well as the value of additional deposits made to the accounts throughout the marriage. Moreover, there was no evidence to indicate that Reid made deposits to the accounts during the period of separation in an effort to deprive Miller of marital property. Consequently, the family court did not err by concluding that the value of the gifts should remain intact for the benefit of the parties' nieces and not subject to equitable division between the parties.

Similarly, Miller attacks the family court's findings about Reid's spending habits during the period of the parties' separation. At trial, Reid was asked to explain her rationale for purchasing tickets to sporting events and concerts; solo travel and vacation packages; furniture; and meals out with family and friends. Reid provided a comprehensive description of the expenses, and she explained that the expenditures were undertaken in an effort to ensure that she could continue to provide services to patients during her 60 – 120-hour-workweeks. After considering the evidence, the family court was not persuaded that Miller satisfied his burden to show that Reid wasted marital assets. It found specifically as follows:

> The parties enjoyed a high standard of living during the marriage, particularly after they received the 1.2 million buy-out from [Reid's] company. [Reid's] spending during this past year is just an expansion of that spending and standard of living. There was no evidence that she was spending marital money on a romantic partner, or that she spent the money to deprive [Miller] of his proportionate share of the marital property. [Reid] earned a lot of money, and she spent a lot money. Nothing presented to this Court rises to the level of dissipation of assets.

The family court's findings of fact were adequately supported by evidence indicating that Reid's personal and professional life were fraught with physical and emotional stress; that her spending was commensurate with her earnings; and that she had not sought to hide, deplete, or divert any part of the marital estate. The court's proper application of the law to the facts is not subject to reversal.

Miller also argues that the family court erred by failing to award to him one-half the value of Reid's bonus income. He contends that in observing that these sums are reflected in its division of the marital bank account, the court failed to consider that the bulk of these funds had already been spent by Reid during the period of separation. This issue is essentially a repeat of Miller's argument that Reid dissipated marital assets. Again, the family court was in the best position to judge the credibility of the witnesses and to weigh the evidence presented by the parties with respect to this issue. The court's findings of fact were adequately supported by the evidence, and its conclusions are not subject to reversal.

Finally, Miller contends that the family court erred by assigning his credit card debt of $16,818.69 to him alone. We disagree.

As with its distribution of marital property, the family court's decisions regarding division of marital debt are reviewed for an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). However, unlike the acquisition of assets, there is no presumption that debts incurred during the marriage are marital. *Id.* Instead, the party claiming that a debt is marital has the burden of proof. In making this determination, the family court considers: the receipt of benefits derived from the debt; the extent of each party's participation; whether the debt was incurred to purchase assets designated as marital property; whether the debt was necessary to provide for the maintenance and support of the family; and any economic circumstances bearing on the parties' respective abilities to assume the indebtedness. *Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014) (citations omitted).

Evidence presented at trial indicated that Miller took $15,688 from the parties' joint bank account. Additionally, Reid continued to pay the mortgage associated with the marital home where Miller resided; the cost of his utilities; the cost of his insurance; and his cell phone bill. Moreover, Miller acknowledged that at least a portion of his credit card debt was incurred for non-marital purposes.

The proof indicated that Miller incurred and benefited from the debt; that the debt was largely unnecessary to provide for his maintenance and support; and that his economic circumstances do not prevent him from repaying the debt. Therefore, we are persuaded that the family court did not abuse its discretion by allocating the $16,818.69 credit card debt to him alone.

The judgment of the Kenton Family Court is affirmed in part, vacated in part, and remanded solely with respect to the valuation of the business at issue and any costs that might be associated with that aspect of the litigation.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Zachary D. Smith
Cincinnati, Ohio

BRIEF FOR APPELLEE:

John A. Berger
Covington, Kentucky