RENDERED:  JULY 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0586-MR

ASHLEY N. KNOTT
(f/k/a ASHLEY N. MILLAY)                                    APPELLANT


                     APPEAL FROM HARDIN CIRCUIT COURT
v.                   HONORABLE M. BRENT HALL, JUDGE
                     ACTION NO. 22-CI-00195


JOSEPH HAROLD MILLAY, III                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND ECKERLE, JUDGES.

CETRULO, JUDGE:  Appellant Ashley N. Knott ("Ashley") appeals the April

2024 Hardin Circuit Court order granting the motion for attorneys' fees of

Appellee Joseph Harold Millay, III ("Joseph").  Finding no abuse of discretion, we

affirm.

# BACKGROUND

In March 2021, Joseph petitioned in the Scott Circuit Court for dissolution of his marriage to Ashley. On July 13, Joseph and Ashley signed a property and separation settlement agreement ("2021 Agreement") whereby, in relevant part, both parties agreed to joint custody of the couple's two minor children. This 2021 Agreement was incorporated into the dissolution proceedings by the family court on July 28 and included:

> For summer 2022, the parties shall alternate time weekly with the children, exchanging the children each Sunday at 6:00 p.m. at an agreed upon location in Simpsonville, Kentucky which the parties agree is halfway between Elizabethtown and Georgetown.
>
> During the school year, [Joseph] shall be entitled to have timesharing with the children every weekend.
>
> . . .
>
> The parent who is not with the children shall be able to have Facetime with the children once daily at an agreed upon time. . . . [Joseph] shall have his call with the children at 4:00 p.m.
>
> . . .
>
> The parties will alternate having time with the children during fall break with [Joseph] having same during even-numbered years and [Ashley] have same during odd-numbered years.

In December 2021, the youngest child made an allegation of child abuse against Joseph. After this allegation, Ashley stopped Joseph's visitations

and his contact with the children. Ashley filed for an emergency protective order ("EPO"), but the EPO was dismissed two weeks later after a hearing.

In January 2022, the oldest child also made an allegation against Joseph. The Cabinet for Health and Family Services ("Cabinet") opened an investigation into the allegations. Joseph voluntarily agreed to forego unsupervised visitation (while the Cabinet investigated) pending the expiration of the Cabinet's prevention plan, a plan that expired on January 21, 2022. However, when the prevention plan expired, Ashley did not resume Joseph's visitation with the children.

In February 2022, the Hardin County Attorney filed a dependency, neglect, and abuse ("DNA") petition. Later that same month, Joseph filed a motion for contempt against Ashley for failure to abide by the parenting time set within the 2021 Agreement. The court reserved on Joseph's motion due to the pending DNA action, and in May, the court ordered the parties to mediation.

In June 2022, Joseph and Ashley (and their respective counsel) signed a mediated agreement ("2022 Agreement"). As a result of the mediation, the County Attorney dismissed the DNA action, and the Cabinet administratively unsubstantiated the allegations. Additionally, the 2022 Agreement stated

> [Joseph] shall undergo a complete alcohol assessment and psychosexual evaluation within sixty (60) days entry of this [2022 Agreement]. . . . In conjunction with his alcohol assessment [Joseph] shall undergo drug and alcohol

> testing using his fingernail clippings within twenty (20) days of this [2022 Agreement].
>
> . . .
>
> Upon completion of the psychosexual evaluation, if there is no finding that [Joseph] poses a risk to the Minor Children, the parties agree that the supervision requirement shall be lifted and the parenting schedule shall immediately revert to the schedule enumerated in the parties' [2021 Agreement].

In July 2022, Joseph moved for an extension of time to undergo the psychosexual evaluation. In August, the family court granted the extension and adopted the 2022 Agreement. Joseph attended the psychosexual evaluation on August 31, 2022, and the subsequent report was dated that same day. This psychosexual evaluation stated

> there are no indications of a pattern of criminality, antisocial personality traits, drug or alcohol or prescription medication abuse history, an interest in any of the paraphilias, an indication of pedophilia or any other sexual deviancy that would warrant concern. His overall profile is simply quite benign.

In September 2022, Joseph's substance abuse and mental health evaluation similarly concluded there was no need for intervention. Both of these evaluations were distributed to the parties by September 2022. Ashley did not/ does not challenge these evaluations or their September 2022 delivery. However, Ashley did not permit Joseph's unsupervised visitations to resume in September 2022, nor allow him to have the children during the October 2022 school fall

-4-

break, nor allow Joseph to FaceTime with the children. Joseph's legal counsel unsuccessfully attempted to assist Joseph in reestablishing visitation, especially before fall break.

In October 2022, the Hardin Family Court appointed a Friend of the Court ("FOC"). The November FOC report stated she reviewed the entire record (including the dissolution action in Scott County and the DNA action in Hardin County) and met with Joseph, Ashley, the children, and the Hardin County Attorney. The FOC report stated the parties agreed (in the 2022 Agreement) that the parenting schedule would *immediately* revert back to the 2021 Agreement upon a finding that Joseph did not/would not pose a risk to the minor children. Such a finding was made, and the parties should be operating under the 2021 Agreement which gave Joseph unsupervised parenting time every weekend and fall break visitation (on even-numbered years). This reversion should have been immediate, and no other restrictions applied beyond the no-risk finding. The FOC stated her belief that there were no pending issues for the parties to adjudicate. However, the FOC noted

> [Joseph] is worried that the moment visitation reverts to unsupervised that new allegations will be lobbied against him. Based upon my interviews with the parties and the minor children, this FOC states that [Joseph's] worry is well founded. Based upon my conversations with the parties and the minor children, I do find it more likely than not that the minor children, to some degree, have been manipulated/alienated against [Joseph] by [Ashley].

-5-

> While this FOC cannot speculate as to whether [Ashley's] actions were intentional or inadvertent, [Ashley's] feelings, thoughts and beliefs toward [Joseph] have spilled over onto the minor children.

Nevertheless, Ashley asserted she was not going to allow Joseph unsupervised visitation until the family court reviewed the EPO petition, Joseph's evaluations, and the DNA petition in a substantive hearing (as opposed to a motion docket), and entered findings consistent with those proceedings and evaluations. The family court initially scheduled a hearing for September 2022, but then had a conflict and rescheduled the hearing.

On November 14, 2022, the family court held a hearing.[1] At this hearing, Ashley *did not object* to Joseph resuming unsupervised visitations, but merely argued she was not required to resume Joseph's visitation until the court made formal findings consistent with the FOC report. Joseph disagreed and argued visitation should have automatically resumed as agreed upon in the 2022 Agreement. The court agreed with Joseph and noted that he "went five (5) months without seeing the kids." The court stated the reversion should have been immediate and the no-risk finding was the only requirement for the reversion. Ultimately, the court ordered the parties to abide by the 2022 Agreement (that stated if there was no finding Joseph posed a risk to the minor children, the

---

[1] A video recording of that hearing is not within the record on appeal.

supervision requirement would be lifted, and the parenting schedule shall immediately revert to the schedule enumerated in the 2021 Agreement). After this hearing, Joseph's visitations resumed, and Joseph moved for attorneys' fees.

In an April 2024 order, the Hardin Family Court awarded Joseph $20,809.80 in costs and attorneys' fees from Ashley due to her "willful and intentional violation" of the 2022 Agreement. The court, in part, stated

> the [2022 Agreement] did not indicate any need for findings to be made by the court, that the parties had previously agreed that if upon completion of the psychosexual [evaluation] that there were no findings of risk, that visitation would immediately revert[.] In fact, at the November 14, 2022 hearing, counsel had no disagreement with the doctor's findings and noted that they agreed that they revert back to the [2021 Agreement] if findings were made that there were no risks to the children. This fits in the overall presentation made by [Joseph] that [Ashley] would use any means necessary to prevent his visitation from reverting back and in fact, [Joseph] incurred many thousands of dollars['] worth of attorneys['] fees attempting to get his visitation to revert pursuant to the [2022 Agreement] which was denied by [Ashley]. In fact, at one point, [Ashley] threatened [Joseph] with a custodial interference warrant if the children were not returned to her or if he attempted to take them on fall break. The Court adopted the findings of the doctors which could have been done by agreed order or easily on a Tuesday docket but had to be set for the November 14 hearing which was completely unnecessary.

> . . .

> [Ashley's] intent was to agree to [Joseph's] visitation on September 30, 2022, which means that when she got the Doctor's report, she believed the findings that the doctors

had made and was not going to object to visitation. However, by [message app], she threatened [Joseph] with custodial interference on that same date. Therefore, the Court cannot believe [Ashley's] position in this matter because she intended to agree with the visitation had the Court held the hearing on September 30, 2022, but on the same date at 6:52 p.m. threatened [Joseph] with [a] custodial interference warrant if he did not return the children to her and denied him his fall break visitation pursuant to the earlier Orders.

. . .

The Court does not believe [Ashley's] position. The Court was not required to make findings because there was an immediate reversion provision in that [2022 Agreement]. Again, [Ashley] told the Court in the hearing that they intended to agree to the doctor's findings, but yet threatened [Joseph] with custodial interference the same date, if he did not return the children from supervised visits.

. . .

[Because Ashley] had taken an unreasonable position and inconsistent position with her earlier [2022 Agreement] and [because] she did not act in accordance with that Agreement which cost [Joseph] $20,809.80 [$20,839.80[2]] in costs and attorneys['] fees in order to secure that visitation. This could have been done easily.

Further, the court stated that the FOC "felt that during her speaking with the oldest child there was a rehearsed narrative that the child went into without being asked." The court noted that Joseph incurred costs of $1,500 for the

---

[2] $15,384.80 + $5,455 = $20,839.80. The $30 discrepancy is unclear, but merely nominal.

psychosexual assessment, $300 to $400 for the substance abuse assessment, $15,384.80 attorneys' fees associated with the November hearing (including $2,700 for a doctor to appear at the November hearing) and $5,455 in attorneys' fees associated with the missed fall break visitation. The court assessed only a total of $20,809.80 in unnecessary attorneys' fees incurred by Joseph. Ashley appealed.

## ANALYSIS

Kentucky Revised Statute ("KRS") 403.220 provides, in pertinent part, that in any proceeding under Chapter 403 (the marriage dissolution and child custody chapter),

> [t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending [the] proceeding . . . and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

Under this statute, a family court may order one party to pay a "reasonable amount" of attorneys' fees of the other party, if the parties' resources are disparate and/or "to sanction or discourage conduct and tactics which waste the court's and attorneys' time." *Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014) (internal quotation marks and citations omitted). We review an award of attorneys' fees for an abuse of discretion. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004)

(citation omitted). An abuse of discretion occurs when a decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted).

The terms of a settlement agreement set forth in a decree of dissolution of marriage are enforceable as contract terms. KRS 403.180(5). The construction and interpretation of a contract is a matter of law and reviewed under the *de novo* standard. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998).

> "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.*

*Money v. Money*, 297 S.W.3d 69, 72 (Ky. App. 2009).

The parenting schedule language – in both the 2021 Agreement and 2022 Agreement – is clear and unambiguous. The 2021 Agreement allowed for unsupervised visitation for Joseph on weekends during the school year, fall break in 2022, and daily Facetime calls when the children were with Ashley. The 2022 Agreement specifically stated that if Joseph's evaluator made a finding that he was not a risk to the children, "the parties agree that the supervision requirement shall be lifted[,] and the parenting schedule *shall immediately revert* to the schedule enumerated in the parties' [2021 Agreement]." (Emphasis added.)

-10-

Ashley signed both agreements and does not challenge the enforceability of those agreements, nor does she contest the finding that Joseph did not pose a risk to the children. Joseph voluntarily agreed to suspend unsupervised visitation pending the expiration of the Cabinet's prevention plan, but that plan expired on January 21, 2022. Ashley received notice by September 2022 that Joseph's evaluators made findings that he was not a risk to the children.

Ashley asserts that before Joseph's unsupervised visitation could be recommended, the family court was required to make additional findings (adopting the evaluator's findings) at a substantive hearing. However, the 2022 Agreement did not require additional findings by the court and the contract's "shall immediately revert" language is clear and unambiguous. We cannot read a provision into the contract that clearly does not exist. *See Money*, 297 S.W.3d at 72. Despite our *de novo* review of the contract, we agree with the family court that "[the 2022 Agreement] in no way indicate[d] that the Court must make findings or that the parties are required to come back to the Court before [Joseph] may exercise his unsupervised parenting."

Here, the family court's award of attorneys' fees was reasonable. The court limited the award of attorneys' fees to the two specific events that resulted from Ashley's disregard of the 2022 Agreement (the November hearing and fall break), but did *not* include the more than $40,000 in Joseph's remaining attorneys'

fees.  The family court expressly stated that "[Joseph] incurred many thousands of dollars['] worth of attorneys['] fees attempting to get his visitation to revert pursuant to the [2021 Agreement] which was denied by [Ashley]."  The family court explained that the November hearing was unnecessary, and Joseph needlessly incurred $15,384.80 in attorneys' fees for that hearing and $5,455 in attorneys' fees for the improperly missed fall break visitation.  Joseph's counsel provided a line-item affidavit of those attorneys' fees.  The court noted Joseph also incurred fees for the evaluations, but did not shift those expenses to Ashley.

Ashley argues the family court erred in finding sufficient evidence of abusive litigation in support of the imposition of legal costs and attorneys' fees, but we do not agree.  On review, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because it is the trial court, not the appellate court, that is in the presence of witnesses and "in the best position to evaluate the testimony and other evidence."  *D.G.R. v. Commonwealth, Cabinet for Health & Fam. Servs.*, 364 S.W.3d 106, 114 (Ky. 2012) (citations omitted).  Here, the family court determined that Ashley did not abide by her prior agreements and unnecessarily demanded a hearing.  The court's imposition of limited attorneys' fees was not improper considering Ashley's conduct which unnecessarily protracted litigation and prevented Joseph's visitations.  *See Rumpel*, 438 S.W.3d

-12-

at 363 (an award of attorneys' fees are permissible to discourage conduct which wastes the court's and attorneys' time) (citation omitted).

Ashley argues that the court did not properly consider the financial resources of the parties, but that argument is without merit. A family court has "great discretionary power in its determination to award or deny attorney[s'] fees." *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 148 (Ky. App. 1990). A court does not need to expressly state the financial resources of the parties in its orders awarding attorneys' fees. *Id.* "Nowhere does it state a [family] court *must* make specific findings on the parties' financial resources. . . . The trial court need only 'consider' the parties' financial situation." *Id.* (emphasis added) (citing *Poe v. Poe*, 711 S.W.2d 849, 852 (Ky. App. 1986)). A review of the record indicates that the family court was aware of each party's financial situation as this information was within the 2021 Agreement which the court entered in July 2021.

Ashley also argues the family court erred in assessing attorneys' fees because she did not initiate the DNA proceedings against Joseph nor was she the "agent provocateur" during the dissolution and/or DNA actions. However, that argument misconstrues the family court's conclusions. The family court did not award attorneys' fees based on Ashley's actions (or lack thereof) prior to September 2022. The family court awarded attorneys' fees in order for Joseph to

recoup his expenses that resulted from the *unnecessary* November 2022 hearing and the missed fall break visitation.

> The Family Court has great discretion in determining whether to award fees and, if so, in what amount. *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). The Family Court is "'in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.'" *Id.*, *quoted with approval in Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990).

*Swan v. Gatewood*, 678 S.W.3d 463, 471 (Ky. App. 2023).

We find the family court's award of attorneys' fees was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Thus, the family court did not abuse its discretion.

## CONCLUSION

Accordingly, we AFFIRM the Hardin Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ramon McGee
Louisville, Kentucky

BRIEF FOR APPELLEE:

Louis I. Waterman
Spencer J. Brooks
Hayden E. Justice
Prospect, Kentucky