**BEECHWOOD BOARD OF EDUCATION,**
Appellant

v.

**Craig WINTERSHEIMER and Susan Wintersheimer, Appellees**

NO. 2015–CA–000582–MR

Court of Appeals of Kentucky.

RENDERED: JUNE 17, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Suzanne Cassidy, Covington, Kentucky

BRIEF FOR APPELLEE: Stephen D. Wolnitzek, Covington, Kentucky

BEFORE: CLAYTON, KRAMER, AND J. LAMBERT, JUDGES.

## OPINION

CLAYTON, JUDGE:

In this case a school board is seeking tuition reimbursement from a family it claims did not reside in its school district for almost two years while the family's children attended the schools. The school board sued the family and lost after a bench trial was held. Finding no error, we affirm.

## FACTS

Craig and Susan Wintersheimer lived in Lakeside Park, Kentucky, outside the boundaries of Beechwood Independent Schools ("Beechwood").[1] Their children did not attend Beechwood. However, in the fall of 2010, the Wintersheimers decided to move into the Beechwood district and build a home. As Beechwood permitted nonresident students to enroll at Beechwood if they planned on living in the district within ninety days, the Wintersheimers enrolled their children at the beginning of the 2010–2011 school year. Per the nonresident policy, the Wintersheimers paid tuition for each of their three children, which totaled approximately $5,000.

As often occurs during major construction projects, delays occurred resulting in the Wintersheimers' new residence not being completed by the end of the fall, 2010 semester. The delays were so significant that groundbreaking did not occur on the property until April 2011, and they were not allowed to finally move into the property until November 19, 2012.

Wanting to remain residents inside the Beechwood district, and wanting to avoid having their children switch schools, the Wintersheimers rented an apartment from their builder beginning in January of 2011. The apartment is located inside the Beechwood district boundaries. The rental cost was approximately $700 per month. The Wintersheimers did not make any payments to the builder while they leased the apartment; instead, its total cost was added to the final bill they received from the builder once the permanent residence was completed. Also in January of 2011, the Wintersheimers notified Beechwood in writing that their new address was the same as the apartment they were now renting. It appears the Wintersheimers only paid rent for the apartment during the months in which their children were in school at Beechwood. Beechwood permitted the students to remain enrolled and changed their statuses from nonresidents to residents.

The Wintersheimers also maintained their Lakeside Park residence, where they resided during the summers. Thus, the Wintersheimers had property interests in three parcels: a single family residence in Lakeside Park; a plot of land in the Beechwood district, upon which their resi-

1. For purposes of this opinion, both the Beechwood Schools and the Beachwood Board of Education will be referred to as "Beechwood" unless the opinion states otherwise.

dence was being built; and an apartment in the Beechwood district. For all intents and purposes, the Wintersheimers desired to leave their Lakeside Park residence and make their home in the Beechwood district.

At some point, Beechwood became suspicious of where the Wintersheimers resided. They instituted an investigation during the summer of 2012. They concluded that the Wintersheimers were residing at the Lakeside Park residence due in part to: a letter that was sent to the apartment's address, which was returned as undeliverable; the Wintersheimers' checks, which still had their Lakeside Park address; and a drive-by of the residences, performed during the summer months, which showed evidence that only the Lakeside Park residence was occupied. Beechwood informed the Wintersheimers that they would need to provide proof of residency and pay tuition from the spring 2011 semester through whatever date they could establish residency within the Beechwood district. They also informed the Wintersheimers that they needed to provide proof of residency for their children to begin school in the fall of 2012. Due to the residency dispute, the Wintersheimers' children were not allowed to attend Beechwood for the first three days of the 2012–2013 school year.

In November of 2012, shortly before the Wintersheimers were allowed to fully move into their new home, Beechwood filed suit in the Kenton Circuit Court seeking $19,030.56 in nonresident tuition for the spring 2011 through fall 2012 semesters. A bench trial was conducted at which Craig and Susan Wintersheimer each testified that while school was in session they would spend time at and sleep at the apartment in the Beechwood district, and they also spent time at the house under construction. They may not have spent every day and night inside the Beechwood school district, but they intended on residing within the district and were making substantial steps toward achieving that goal. They did spend the summers in their home in Lakeside Park.

Beechwood's witnesses included various employees and administrators. They testified to their investigations that were predominately performed during the summer months. They also testified to their myriad views on what made someone a Beechwood "resident." Beechwood's school policies relating to residency were introduced, as were documents relating to the Wintersheimers' various property interests.

At the conclusion of the bench trial, the Kenton Circuit Court found Beechwood failed to prove its case:

> The Wintersheimers each testified that they had the intention of making the Fort Mitchell apartment their residence, and that they in fact did live there during the times in question. The testimony of the school officials and other evidence in the record indicated that the Wintersheimer family may not have lived at their stated address in Fort Mitchell during the summer of 2012. There is insufficient evidence in the record to establish that they did not reside at that address during the second half of the 2010–2011 school year, the 2011–2012 school year, or the beginning of the 2012–2013 school year.
>
> IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendants Craig and Susan Wintersheimer have been bona fide residents of the Beechwood School District from January 2011 through the date of trial and do not owe tuition to the Beechwood Schools for their children having attended there during that period. The complaint against them is hereby dismissed with prejudice.

(Opinion, pp. 2–3). Beechwood now appeals.

## STANDARD OF REVIEW

The instant case is an appeal from a bench trial. Thus:

> [T]he trial court's findings of fact are "not [to] be set aside unless clearly erroneous with due regard being given to the opportunity of the trial judge to consider the credibility of the witnesses." *Lawson v. Loid,* 896 S.W.2d 1, 3 (Ky.1995) (citing CR 52.01). Factual findings are not considered clearly erroneous if they are "supported by substantial evidence." *Gosney v. Glenn,* 163 S.W.3d 894, 898 (Ky.App.2005) (citations omitted). Appellate review of legal determinations and conclusions from a bench trial is *de novo. Id.* (citations omitted).

*Goshorn v. Wilson,* 372 S.W.3d 436, 439 (Ky.App.2012) (alterations in original, footnote omitted).

## ANALYSIS

The sole issue before this Court is: were the Wintersheimers bona fide residents in the Beechwood district between the spring semester of 2011 and the fall semester of 2012? In spite of the Wintersheimers' two property interests inside the Beechwood district, the substantial financial outlays they expended to reside in the Beechwood district, the amount of time the Wintersheimers stayed at and/or slept in their various Beechwood properties, and their clear intention to ultimately reside in the Beechwood district, Beechwood asks us to answer this question in the negative. It argues that the Wintersheimers' obtained the apartment inside the Beechwood district as "merely a ruse to attempt to avoid having to pay tuition for their children to attend Beechwood schools prior to their official move to a new residence located within the School District." (Aplt's Reply

Brf. at 1). Beechwood asks us to find the Wintersheimers were nonresidents and could be charged tuition. We disagree with Beechwood.

Under Kentucky Revised Statutes (KRS) 158.120(1), "[a]ny board of education may charge a reasonable tuition fee per month for each child attending its schools whose *parent, guardian, or other legal custodian* is not a bona fide resident of the district." (Emphasis added). Thus, we must determine where Mr. and Mrs. Wintersheimer were bona fide residents. As neither the statute nor the Chapter defines "bona fide resident," we turn to case law interpreting similar statutes.

In a case involving school residency, our state's then-highest Court had to interpret Section 3605 of the Kentucky Statutes of 1899, which stated, "that no child of persons residing beyond the city limits shall be admitted as a pupil in any such schools except on payment of such tuition fees as the board may require." *Board of Education of City of Winchester v. Foster,* 116 Ky. 484, 76 S.W. 354 (1903). In that case, parents who resided in Virginia sent their daughter to live with her uncle who resided in Kentucky. The uncle was "to board, clothe, educate, and treat [the child] as one of his own children so long as she continued [as] a member of his family" or until she turned 21 years of age. *Id.* The uncle sent the child to the local city school, which required tuition be paid because it did not believe the child's parents were residents within the city limits.

The Court examined the relevant statutes and found "no provision for the admission of children who are not bona fide residents of the city[.]" *Id.* As the niece was not the uncle's child, and nothing about the family arrangement created a binding contract on the uncle, nor did it

make the uncle the child's guardian or parent,

> [h]er admission free to the public schools would violate not only the express letter, but also the spirit, of the statute, as it was plainly the purpose of the General Assembly in the enactment of the statute that the benefit accruing from the maintenance of such schools should be limited to bona fide residents of the city, on whom the burden for their maintenance is cast.

*Id.* at 355.

*Foster's* analysis is unhelpful to the instant case as it involved a child who was temporarily living with her uncle while her parents resided in another state. In contrast, the Wintersheimers maintained custody of their own children and did not ship their children off to a distant relative in order to obtain free education. If the Wintersheimers had sent their children to live with a relative in Beechwood's district, *Foster* would be applicable. The Wintersheimers remained a family unit throughout the building of their residence in the Beechwood district. Accordingly, we turn to other case law to help us determine what constitutes a bona fide residence.

In *Whitaker v. Bradley*, 349 S.W.2d 831 (Ky.1961), an issue was presented regarding a spouse's residence. There, KRS 452.470 required a marital dissolution action to be brought in the county where the wife resided. The wife left the marital residence in Madison County and took "part of her personal belongings" and went and rented living quarters in Fayette County. She then filed the dissolution action. Her husband claimed the action should have been filed in Madison County as she was allegedly still residing at the marital residence in Madison County. The Fayette Circuit Court disagreed and found that the wife had become a bona fide resident of Fayette County by removing part of her personal belongings from the Madison County residence and renting living quarters in Fayette County. Our state's then-highest Court agreed.

*Whitaker* thus establishes that moving part of one's belongings out of his or her residence and into a rented property in another county with the intention to reside in that county can make one a bona fide resident of that county. In this sense, the Wintersheimers were bona fide residents because they moved part of their belongings into the Beechwood district and rented an apartment in the Beechwood district. This conclusion is even stronger when considering the case of *Mobley v. Armstrong*, 978 S.W.2d 307 (Ky.1998).

In *Mobley* our state's highest Court was faced with deciding whether a judicial candidate was a resident of the county in which he was seeking to become district judge. Section 122 of the Kentucky Constitution requires a candidate be a resident of the "district from which he is elected for two years next preceding his taking office." To determine whether a judicial candidate was a resident during the two-year period, the Court adopted the following test:

> . . .we must evaluate both actions and intent when determining residency because neither is exclusively controlling. *Semple v. Commonwealth*, Ky., 181 Ky. 675, 205 S.W. 789, 791 (1918). If someone's actions conclusively show he resides in one place, his intention to live in another place may not override these facts. *Id.* "Such an intention is a mere floating one, and is not decisive of the question." *Semple*, 205 S.W. at 791 (*citing Baker v. Baker, Eccles & Co.*, 162 Ky. 683, 173 S.W. 109, (1915); *Graves v. City of Georgetown*, 154 Ky. 207, 157 S.W. 33 (1913); *Saunders v. City of Flemingsburg*, 163 Ky. 680, 174 S.W. 51 (1915)). Furthermore, any expressed

intent must be evaluated in light of conduct which is either consistent or inconsistent with such expressed intent. *Ravenel v. Dekle*, 265 S.C. 364, 218 S.E.2d 521, 528 (1975).

*Mobley*, 978 S.W.2d at 310–311. Utilizing that test, the Court found the judicial candidate's bona fide residence was in Trimble County, not Jefferson County where he was running for district court. The Court found the following factors relevant:

1. The candidate, who previously lived in Trimble County, purchased a house in Jefferson County less than two years before he ran for district court judge;

2. The candidate did not change his voter registration to Jefferson County until less than two years before he ran for district court judge;

3. The candidate's driver's license was still issued in Trimble County;

4. One of the candidate's automobiles was titled in Trimble County;

5. The candidate's tax records stated his home address was Trimble County;

6. The candidate "made his permanent home in Trimble County, only sleeping in Jefferson County occasionally and then in a hotel or at his place of business;" and

7. The candidate kept all of his personal goods not directly related to his profession in Trimble, not Jefferson County.

*Id.* at 308–311.

Applying *Mobley* and *Whitaker* to the instant case leads us to the same conclusion as the Kenton Circuit Court. Both the actions and intent of the Wintersheimers demonstrate that they were bona fide residents of the Beechwood school district. Just as in *Whitaker*, the Wintersheimers rented an apartment inside the district and moved part of their belongings to the apartment. They sometimes slept and stayed in the apartment. And they rented the apartment to remain true to their intention to reside in the district. Had their house been completed by the spring semester of 2011, they would have simply moved into their new house and been permanent residents of the Beechwood school district.

Unlike *Mobley*, where the judicial candidate's actions and intent showed he desired to remain a Trimble County resident while running for a Jefferson County judgeship, the Wintersheimers' actions and intent showed they were making efforts to be Beechwood residents. The Wintersheimers were not pulling a fast one on the school district, as Beechwood would have us find. They expended substantial sums of money on an apartment, moved furniture multiple times, spent nights in the apartment, and spent time at their home that was under construction.

Moreover, they followed the proper procedures by notifying the school district of their intention to live within the district within ninety days and paying the tuition for the fall semester of 2010. When their house was not built in time, they then executed a lease for an apartment in the district so they could properly be residents and fulfill their stated intention of living within the district. If they were simply leasing the apartment as a "ruse" as Beechwood argues, why would they wait a semester and pay full tuition for that semester? Why would they not have just leased the apartment from the builder at the beginning of the fall 2010 semester and held themselves out as Beechwood residents?

Beechwood reads too much malice into the Wintersheimers' actions. Their efforts to provide a stable education and a stable residence for their children in light of con-

struction delays, statutes, and regulations are commendable, not condemnable. We have thoroughly reviewed the record in this case, including the depositions and the trial, and find that the Wintersheimers did everything they could to comply with the law and regulations. They consulted with an attorney, they consulted with the school, they spent a considerable amount of money on an apartment, and they moved furniture from residence to residence, and on and on. Beechwood failed to prove the Wintersheimers were not bona fide residents of the Beechwood district. Whether we review the trial court's bona fide residence finding as a factual finding for clear error, *see Mobley*, 978 S.W.2d at 310, or as a conclusion of law *de novo*, the result is the same—the Wintersheimers were bona fide residents of the Beechwood district.

Accordingly, the trial court did not err by finding against Beechwood.

## CONCLUSION

The Wintersheimers' actions and intentions both reveal that they were bona fide residents of the Beechwood school district. Beechwood's claim for nonresident tuition was thus properly denied. Accordingly, we affirm the Judgment dismissing the complaint with prejudice.

ALL CONCUR.