RENDERED:  JUNE 9, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0202-MR

MARSHA SWAN                                                          APPELLANT


APPEAL FROM FAYETTE FAMILY COURT
v.      HONORABLE LUCINDA CRONIN MASTERTON, JUDGE
ACTION NO. 16-CI-00653


GEORGE GATEWOOD; AND
JASON RAPP                                                           APPELLEES


OPINION AND ORDER
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, EASTON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  Marsha Lorraine Swan (Mother) appeals from an order of

the Fayette Family Court granting the motions of George Gatewood (Father) to

enforce the parties' custody agreement and for attorney fees.  Mother argues that

the custody agreement grants her sole decision-making authority concerning their

child's education, and her decisions are not subject to review.  We conclude that

the Family Court did not err in finding that the agreement as a whole requires Mother's decisions to be reasonable and not prejudicial to Father's rights as a joint custodian. We further conclude that the Family Court did not clearly err in finding that Mother's choice of a school in Jefferson County was unreasonable and in limiting Mother's educational choices to a school in Fayette County. Finally, we find no abuse of discretion in the Family Court's award of attorney fees to Father. Hence, we affirm both orders.

Mother and Father are the parents of G.B.S. (Child), who was born in August 2015. Mother and Father were never married or lived together. However, Father filed an acknowledgement of paternity upon Child's birth, and he is listed as Child's father on the birth certificate.

Although Mother and Father initially cooperated with custody and visitation matters following Child's birth, disputes arose between the parties within a few months. On February 16, 2016, Mother filed a petition seeking sole custody of Child, with Father receiving only limited and supervised visitation. Father responded with a petition requesting joint custody with "regular" timesharing under the Standard Visitation Guidelines adopted in that circuit.

From the time of Child's birth, Mother raised Child to be bilingual and spoke to Child in both French and English. Child attended pre-school at Providence Montessori School from August 2019 through March 2020, after which

-2-

time the school transitioned to online learning due to the COVID-19 pandemic.

Mother also enrolled Child in an online learning program where the instructor was

bilingual in French. However, the parents continued to disagree about where Child

would attend kindergarten. Mother wanted Child to attend a school with a French

language program. She identified Whitney Young Elementary ("Whitney

Young"), in Louisville, as her preferred school. Father wanted Child to attend

Ashland Elementary School, which is in Fayette County.

While these discussions were ongoing, the parties reached a mediated

agreement ("the Agreement") on the disputed issues of custody. The Family Court

entered the Agreement as an Agreed Order on February 24, 2021. In pertinent

part, the Agreement required the parties to use the "AppClose" messaging

application to share communication and scheduling about Child. "The use of

AppClose can facilitate their communication of the a [*sic*] venue outside of the

Fayette County public school system she shall [*sic*] activities, school events,

appointments, timeshare, vacations, etc." Finally, the Agreement sets out that the

parties "shall continue to follow the equal 2-2-3 timeshare schedule with

exchanges occurring Monday, Wednesday, and Friday mornings at 8:30 a.m.,

unless otherwise agreed upon by the parties through the App."

Most significantly to this appeal, the Agreement further provides:

> [Mother] and [Father] shall share joint custody of their
> minor son[.] The parties will make joint decisions of all

issues impacting major areas of his life including but not limited to educational, medical, and religious/spiritual. If, after consultation, the parties cannot reach provided agreement, [Mother] shall have final decision-making power regarding educational and medical choices and will keep [Father] informed of providers and care. Homeschooling will not be considered after the 2021-2022 school year. Both parties shall complete any paperwork necessary to release full educational, religious and medical records to the other parent.

Despite the entry of the Agreement, the parties continued to disagree over the choice of kindergarten for Child. Father objected to Child attending Whitney Young due to the distance. He complained that the additional travel time would affect both his timesharing and his ability to participate in Child's school activities. Father also expressed concerns about the low scores of students at Whitney Young. Consequently, he stated that Child should attend kindergarten in Lexington, preferably at Ashland Elementary. Mother continued to express her preference for Whitney Young because it had a French Immersion Program.

In the summer of 2021, Mother enrolled Child at Whitney Young, and Child began attending there in August. In response, Father filed an "Emergency Motion to Enforce and Amend Mediation Agreement." He argued that her choice of Whitney Young was unreasonable and that it amounted to a *de facto* relocation in violation of his joint-custody and timesharing rights. Father also filed a motion seeking attorney fees incurred in filing the motion. The Family Court scheduled

-4-

the matter for a hearing in December 2021. In the meantime, Child began attending Whitney Young in the Fall of 2021.

Both Father and Mother testified at the hearing on December 15, 2021. Mother stipulated that she had no desire to change the parties' equal timesharing, but she conceded that the schedule may have to change to accommodate Child's school attendance in Louisville. Much of their testimony concerned the parties' discussions on AppClose about the most appropriate school for Child. In particular, the parties strongly disagreed about when Mother first indicated that she wanted to send Child to Whitney Young and when Father stated his objections to that choice. The parties also introduced a log of the AppClose discussions.

The Family Court also heard testimony from Father's wife, Haley Harris (Harris), and from the Assistant Principal at Whitney Young, Katie Bleiden (Bleiden). Harris's testimony mainly concerned Father's interactions with Child, as well as Mother's and Father's discussions about the choice of school. Bleiden testified that Child is doing well at Whitney Young. She provided records showing that Child scores in the 90th percentile in reading and is taking second-grade math classes. Bleiden further testified that Father is included in the file as authorized to receive information about Child's progress in school. She also said that Child

receives French instruction for one hour each day, but he is the only one in his class who is proficient in French.

Most notably, Bleiden testified that the French instructor and replacement departed the school in September 2021. Consequently, she stated that the school no longer had a French Immersion Program and was unlikely to restart it during the current school year. Bleiden further noted that any new French Immersion Program would start with the kindergarten class, and there was no guarantee that Child would be a part of the program. However, she added that Whitney Young continues to have its International Baccalaureate Program. Bleiden also testified that any student attending Jefferson County Public Schools must have a Jefferson County address.

Mother testified that she chose Whitney Young for Child because it was the only elementary school in Kentucky with a French Immersion Program. She also mentioned the school's International Baccalaureate Program. Mother stated that her main goal for Child is education in French. She has spoken French with Child for most of his life, and he is fluent in the language. Mother stated that she understood that Whitney Young no longer offers a French Immersion Program, but she wants Child to continue attending that school for at least the current school year. She also feels that Child is doing well there, and that any change would be disruptive.

In both her testimony and in the AppClose logs, Mother stated that she had signed a lease for an apartment in Louisville where she and Child would stay during the school year. Mother also testified that she continues to maintain a residence in Lexington. Mother drives Child back and forth to Lexington for timesharing with Father. When Father has overnight timesharing, Mother spends the night at her Lexington residence.

Father is concerned about the travel time necessary between Lexington and Louisville and the effect it may have on his parenting time. Father also testified that he researched the test scores for Whitney Young on the Kentucky Department of Education's website. From his research, he learned that the school's test scores were in the bottom 20% of scores statewide. Along these lines, Father introduced records from the Kentucky Department of Education showing that Whitney Young had 330 "behavior events" during the 2019-2020 school year. Bleiden testified that Whitney Young is designated as a "Comprehensive Improvement School" because it was in the lowest-performing 5% of schools in the Commonwealth. However, those scores and its status as a Comprehensive Improvement School were based on Whitney Young's scores in the 2019-2020 school year.

At the conclusion of the hearing, the Family Court made oral findings granting Father's motion to enforce the Agreement. Thereafter, the Family Court

committed these findings to a written order entered on January 20, 2022. The Court recognized that the Agreement gave Mother final decision-making authority on educational issues. However, the Court concluded that the Agreement did not authorize Mother to make unreasonable decisions or risk fundamentally changing the parties' relationship with Child.

The Court found that Mother's decision to send Child to Whitney Young was unreasonable for several reasons. First, the Court noted the testimony that Whitney Young no longer offers the French Immersion Program, which was the primary reason Mother chose the school. Second, the Court recognized Mother's testimony about the International Baccalaureate Program, but noted that Mother had never cited that reason as a basis for choosing Whitney Young. And third, the Court pointed out Whitney Young's poor test scores and disciplinary issues. Given these factors, the Court determined that there was no reason for Child to continue attending Whitney Young.

The Family Court separately found that the extended travel time would directly affect Father's timesharing with Child. The Court also noted that Father clearly expressed his disagreement with the choice of Whitney Young both before and after the parties entered the Agreement. The Court concluded that Mother made a "unilateral" decision to enroll Child at Whitney Young on a "trial"

basis in order to "lay the groundwork" for a later motion to re-locate with Child. The Family Court characterized this as "offensive behavior."

Based on these findings, the Family Court directed Mother to enroll Child at a Fayette County school no later than January 3, 2022. The Court specified that Mother had the option of sending Child to a private school, but Father has no obligation to pay for it or to facilitate an application for financial aid. The Family Court declined to address the "larger issue" of modifying the Agreement, limiting its holding to whether Mother's decision to enroll Child at Whitney Young was reasonable under the terms of the Agreement. The Court took the parties' cross-motions for attorney fees under advisement. Finally, the Family Court addressed several matters that are not at issue in this appeal.

In a separate order entered on February 17, 2022, the Family Court granted Father's motion for attorney fees. That Court found that Father was required to bring the motion after Mother made the unilateral decision to send Child to a school outside Fayette County. The Court also noted that Mother could have avoided the extensive litigation by filing motions to determine the extent of her decision-making authority or to relocate. The Court concluded that "the bulk of the litigation was the direct result of [Mother's] unreasonable abuse of final decision-making power for school issues and her unwillingness after the fact to even agree that these decisions were subject to court review." Consequently, the

Family Court directed Mother to pay $8,000 in attorney fees to Father. Mother now appeals from these orders.

As a preliminary matter, Mother has filed a motion to strike Father's responsive brief. Both RAP[1] 32(B)(4) and its predecessor, CR[2] 76.12(4)(c)(v), require the argument section of an Appellee's brief include "ample supportive references to the record[.]"[3] Mother concedes that his brief's Counterstatement of Facts contains adequate citations to the record, but maintains that his Argument section fails to include sufficient citations to the record.

When an appellate advocate fails to abide by the appellate briefing rules, this Court has the option to: (1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, if the briefing deficiency pertains to the appellant's statement of preservation of error. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021). *See also Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). However, dismissal based upon non-

---

[1] Kentucky Rules of Appellate Procedure.

[2] Kentucky Rules of Civil Procedure.

[3] Mother's brief was filed with this Court on November 30, 2022, and was subject to the provisions of CR 76.12(4)(c). Father's brief was filed on February 15, 2023, and was subject to the provisions of the RAP, which became effective on January 1, 2023. However, the requirements of these sections are largely the same. Consequently, the transition to the new rules does not affect our analysis.

-10-

compliance with the rules is not automatic. *Baker v. Campbell Cnty. Bd. of Educ.*, 180 S.W.3d 479, 482 (Ky. App. 2005). In this case, Father did not separately include record citations to factual matters in the Argument section of his brief. But he did include record citations for all of these factual matters in the Counterstatement section of his brief. The deviation from the rules is largely technical and does not significantly impede our review. Therefore, we conclude that the deficiencies in Father's brief do not merit any sanctions. Thus, we will deny Mother's motion to strike.

Father maintains that this appeal is moot because Whitney Young has never reinstated its French Immersion Program. Since this program was the primary reason that Mother chose Whitney Young, Father contends that there is no longer any matter in controversy. Mother contends that Father may not refer to matters occurring after the filing of this appeal and that are outside the record.

However, under Kentucky law, mootness is a question of justiciability, which may be raised at any time. *See Commonwealth Cabinet for Health and Fam. Servs., Dep't for Medicaid Servs. v. Sexton by and through Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 193 (Ky. 2018). As a general rule, our courts will not render a decision that cannot have any practical, legal effect on a then-existing controversy. *Morgan v. Getter*, 441 S.W.3d 94, 98-

99 (Ky. 2014). Thus, Father is entitled to raise the issue of mootness as a bar to the appeal.

Moreover, this appeal is not moot because Mother is challenging more than the Family Court's holding regarding her decision to send Child to Whitney Young. She also argues that the terms of the Agreement give her "final" decision-making authority as to educational decisions, and that those decisions are not subject to judicial review absent a motion to modify the custody agreement. Since a controversy still exists concerning that matter, we will not dismiss the appeal as moot.

Thus, we turn to the central issue raised in Mother's appeal – whether Mother's "final decision-making power regarding educational and medical choices" is subject to judicial review for "reasonableness." Mother contends that the plain language of the provision allows her to choose any school for Child. Consequently, she asserts that the Agreement is only subject to modification under the provisions of KRS[4] 403.330 or KRS 403.340.

The construction and interpretation of the Agreement at issue in this case was a matter of law for the Family Court to decide. *Island Creek Coal Co. v. Wells*, 113 S.W.3d 100, 103 (Ky. 2003). This Court conducts a *de novo* review of

---

[4] Kentucky Revised Statutes.

the Family Court's interpretation of the Agreement. *Id.* However, it is well-established that a contract or agreement must be construed as a whole, giving effect to all parts and every word if possible. *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). Thus, the "final decision-making power" provision must be construed in light of the entire Agreement and not just in isolation.

The Agreement requires the parties to make joint decisions on all issues impacting the major areas of Child's life. Mother's "final decision-making power" regarding educational choices may only be exercised if the parties cannot reach an agreement "after consultation[.]" And, in addition to this language, the Agreement provides that "[t]he parties shall attempt to agree upon where the child will attend compulsory school beginning with the 2021-22 school year by March 15, 2021."

The Agreement clearly contemplates that Mother will have the final say on educational choices. But given the additional language, it does not permit Mother to exercise that discretion without a good-faith effort to come to an agreement. The Family Court found that Mother enrolled Child at Whitney Young over Father's stated objections and without considering local options. We conclude that the Family Court properly considered the reasonableness of Mother's decision based upon the Agreement as a whole.

The Agreement does not specifically limit Mother to schools within a particular, geographic area. However, Mother cannot exercise her "final decision-making power" in a manner that affects Father's rights under the Agreement. Mother interprets the Agreement as allowing her to enroll Child in any school within a radius of Lexington that would allow continuance of the timesharing schedule. Mother further contends that Father's total timesharing will not be affected by Child's attending school in Louisville. But Mother conceded at the hearing that the timesharing schedule would have to be modified to accommodate the travel time. The Family Court found that Mother's decision to send Child to Whitney Young materially affects the quality of Father's timesharing.

The Agreement adopts the Fayette County timesharing guidelines, which provide that neither party shall relocate without notifying the other party and seeking permission of the Family Court. Mother complains that the Family Court improperly found that her actions amount to a "*de facto* relocation." But Mother admitted that she rented an apartment in Louisville where she and Child would stay while school was in session. Mother also testified that she would consider a permanent move to Louisville depending on how well Child did at Whitney Young.

Assistant Principal Bleiden testified that any student attending Jefferson County Public Schools must have a Jefferson County address. Mother

admitted that she is not paying tuition for Child to attend Whitney Young, which would be required of a parent who is not a *bona fide* resident of the school district. KRS 158.120(1). *See also Beechwood Board of Education v. Wintersheimer*, 493 S.W.3d 390 (Ky. App. 2016). Thus, we agree with the Family Court that Mother's actions effectively amount to a relocation, in contravention of the timesharing guidelines.

Finally, Mother specifically stated that she wanted Child to participate in a French Immersion Program, and Whitney Young is the only elementary school in the state that offers such a program. Although this was true when she enrolled Child, Whitney Young discontinued the program shortly after Child began attending school there. At the time of the hearing, there was no reasonable expectation that it would be reinstated. There are no other compelling reasons for Child to attend Whitney Young, as the school does not offer any unique programs, and its test scores are among the lowest in the state.

Since Mother, Father, and Child all continue to reside in Kentucky, the Family Court retained exclusive continuing jurisdiction over the child-custody matter. KRS 403.824(1). We agree with the Family Court that, while Mother has final decision-making power regarding educational choices for Child, that discretion is not unlimited. In this case, Mother's choice of Whitney Young directly affects Father's timesharing. The choice limits Father's ability to

participate in Child's school activities, and the increased travel time burdens the exercise of his timesharing. Furthermore, Mother's choice effectively amounts to a change in residence without prior approval of the Court as required by the Agreement. And Mother was unable to identify any other reasons why Whitney Young is the best school for Child to attend. Under these particular circumstances, the Family Court did not err in finding that Mother's decision was unreasonable. Therefore, we conclude the Family Court did not err by limiting her educational decisions to Fayette County schools. Having reached this conclusion, we need not address whether the Agreement was subject to modification under KRS 403.330 or KRS 403.340.

Mother next argues that the Family Court abused its discretion by awarding attorney fees to Father. KRS 403.220 provides that, "after considering the financial resources of both parties[,]" a court may order one party to pay another party's attorney fees. The Family Court has great discretion in determining whether to award fees and, if so, in what amount. *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). The Family Court is "'in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.'" *Id.*, *quoted with approval in Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). Thus, we review for an abuse of discretion. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004).

Despite this wide discretion, the Family Court is required to make finding of reasonableness prior to any award of attorney fees. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). Furthermore, in *Smith v. McGill*, *supra*, the Kentucky Supreme Court emphasized that the statute does not require that a financial disparity exist in order for a trial court to make such an award. 556 S.W.3d at 556. The Court elaborated on that point in its holding:

> While financial disparity is no longer a threshold requirement which must be met in order for a trial court to award attorney's fees, we note that the financial disparity is still a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture.

*Id.*

In this case, the Family Court directed both parties to submit affidavits in support of their cross-motions for attorney fees. The Court also directed the parties to submit evidence of their respective, financial resources. In its findings, the Family Court noted that, while Father earns more than Mother, Mother has considerable resources of her own and maintains a more expensive lifestyle. And as noted above, the Court found that Mother was primarily responsible for the dispute and the ensuing litigation.

Contrary to Mother's argument, we conclude that the Family Court adequately considered the extent of both parties' resources and the conduct of both parties surrounding Father's motion to enforce the Agreement. Mother does not

-17-

complain about the sufficiency of the evidence concerning the reasonableness of the amount of attorney fees awarded to Father. Consequently, we find no abuse of discretion in the award of attorney fees.

Accordingly, we affirm the January 20, 2022, order of the Fayette Family Court finding that Mother arbitrarily exercised her decision-making authority under the Agreement and directing her to enroll Child in a Fayette County school. We further affirm the Family Court's February 17, 2022, order awarding Father attorney fees in bringing his motion. Finally, we deny Mother's motion to strike Father's brief.

ALL CONCUR.


ENTERED: _June 9, 2023_____        _____
                                   JUDGE, COURT OF APPEALS



BRIEFS FOR APPELLANT:              BRIEF FOR APPELLEES:

Allison S. Russell                 Jason Rapp
Shanna R. Ballinger                Lexington, Kentucky
Louisville, Kentucky


-18-