## Iring v. Iring.

(Decided May 7, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Divorce—Second Divorce—When Granted.—Under section 2118, of the Kentucky Statutes, providing that "there shall not be granted to any person more than one divorce except for living in adultery to the party not in fault and for which a divorce may be granted to both husband and wife," a second divorce cannot be granted to the same person except upon the ground that the other party has been guilty of living in adultery or for a cause for which a divorce may be granted to both parties.

2. Divorce—County Attorney—Duty of—In Respect to.—Under section 2119 of the Kentucky Statutes, it is the duty of the county attorney to resist every application for divorce.

CLEM W. HUGGINS for appellant.

J. MAT CHILTON and NAT C. CURETON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

This is a divorce case, and the only question is whether the appellant, Ora Iring, was entitled to have a divorce from her husband, appellee, Walter A. Iring.

In her petition, which was filed in March, 1919, the only ground upon which she sought a divorce was "that without like or any fault on her part, the defendant has

behaved toward her in such cruel and inhuman manner for not less than six months as to indicate a settled aversion to her and such as to destroy permanently her peace and happiness."

To this petition, the defendant was duly summoned, but did not appear, and evidence taken on behalf of plaintiff supported her ground for divorce. After this, the county attorney of Jefferson county, by leave of the court, was permitted to and did file an answer, as it was his right and duty to do under section 2119, Kentucky Statutes, resisting the application for divorce, on the ground that on March 5, 1914, the plaintiff, Ora Iring, had filed an action for divorce in the Jefferson circuit court against her then husband, Lunsford Boies, in which petition it was set up as the only cause of divorce relied on, that defendant, Lunsford Boies, "without like or any fault upon her part has habitually behaved toward plaintiff for not less than six months in such cruel and inhuman manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness."

The answer further averred that the plaintiff in that action, having taken evidence that supported her cause, was, in May, 1914, granted an absolute divorce from the defendant, Lunsford Boies, and, "therefore, was not entitled to have a divorce from Iring, as she was seeking such divorce upon the same identical ground that she procured a divorce from her former husband, Lunsford Boies."

To this answer, Mrs. Iring, by counsel, filed a general demurrer, which was overruled, and thereupon declining to plead further her petition was dismissed and she has brought the case here by appeal.

In section 2117, of the Kentucky Statutes, it is provided that: "Courts having general equity jurisdiction may grant a divorce for any of the following causes, to both husband and wife:

"1. Such impotency or malformation as prevents sexual intercourse.

"2. Living apart without any cohabitation for five consecutive years next before the application.

"Also to the party not in fault, for the following causes: . . .

"1. Living in adultery with another man or woman.

. . .

"Also to the wife, when not in like fault, for the following causes:   .   .   .

"Habitually behaving toward her by the husband, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace or happiness.   .   .   .

"Also to the husband for the following causes:`.   .   .

"When not in like fault, habitual drunkenness on the part of the wife of not less than one year's duration.

"Adultery by the wife, or such lewd, lascivious behavior on her part as proves her to be unchaste, without actual proof of an act of adultery."

It is further provided in Section 2118 that: "A judgment of divorce authorized either party to marry again, but there shall not be granted to any person more than one divorce, except for living in adultery, to the party not in fault, and for the causes for which a divorce may be granted to both husband and wife." And in section 2120 that: "Every judgment for a divorce may, at any time, be annulled by the court rendering it on the joint application of the parties, and they restored to the condition of husband and wife, but no divorce shall thereafter be granted between them for the same or a like cause."

It will be observed that Mrs. Iring was granted a divorce from her former husband, Boies, upon the identical ground that she sought to obtain a divorce from her husband, Walter A. Iring, and, therefore, the correctness of the judgment of the lower court, refusing her a divorce and dismissing her petition, depends upon the proper construction of section 2118, *supra*.

Repeating again this section in part, it provides that: "There shall not be granted to any person more than one divorce, except for living in adultery, to the party not in fault, and for the causes for which a divorce may be granted to both husband and wife';" and it is contended by counsel for Mrs. Iring that the meaning of this section is, that except for living in adultery and for the causes for which a divorce may be granted to husband and wife, not more than one divorce shall be granted to the same person from the same person; or, in other words, that where a divorce is granted and the parties marry again, or the divorce is annulled under section 2120 they may not be divorced a second time except for

adultery or the causes that authorize a divorce to both husband and wife.

The lower court, however, rejected this construction, and, giving the section a broader meaning, ruled that not more than one divorce could be granted to any person except upon the ground that the other party had been living in adultery, or for a cause for which a divorce might be granted to both husband and wife, and as the cause for which Mrs. Iring was granted a divorce from her first husband, Boies, and the cause for which she sought a divorce from her present husband, Iring, was not a cause for which a divorce might be granted to both parties but only a ground upon which the wife might obtain a divorce her petition must be dismissed.

From this statement of the case, it will be seen that the question before us falls within a very narrow compass, depending upon whether the construction of section 2118 insisted on by counsel for Mrs. Iring, or that adopted by the lower court shall prevail.

In opposition to the construction put upon the statute by the lower court, counsel for Mrs. Iring earnestly insist that it would be detrimental to public morals to forbid persons who had been divorced from marrying again; would have a tendency to encourage dissolute habits; and beside would be-contrary to justice as well as cruel and inhuman punishment to deny to a good and pure woman the right to secure a second divorce if she was so unfortunate as to innocently contract a second marriage with a brutal, mean or worthless man, and this only because she had previously obtained a divorce from a former husband for a cause other than living in adultery or that was not available to both parties.

The eloquent and pathetic description of the pitiable plight in which the statute, according to its construction by the lower court, would leave a good but unfortunate woman who had contracted a second unhappy marriage is quite affecting, but we cannot yield to its persuasive and touching influence, because our duty is to administer the law as we find it written, when it is within the power of the legislature to enact it and there is no room for difference of opinion as to its meaning.

The courts have nothing to do with the making of laws concerning the marriage relation: who may enter into it, or the causes for which divorces may be granted.

The regulation and control of the whole subject, in all of its aspects, has been confided to the legislature, free from any constitutional limitation, with the exception that in the third Constitution of the state, adopted in 1850 (art. 2, sec. 32), as well as in the present Constitution, adopted in 1891 (section 59), the legislature was prohibited from granting divorces, a practice that had been freely indulged in by the legislature from the beginning of the state down to the adoption of the Constitution of 1850.

To many lawyers of today, it may seem curious that at every session of the legislature from the beginning of the state down to 1850, divorces were granted by special acts; some of these acts divorcing, under a title such as "an act for the divorce of R. Tomlinson, et al.," as many as a dozen couples.

The legislature, in granting these divorces, did not set out in the acts the causes for which they were granted, contenting itself with a brief statement that the parties named in the act were divorced; and in Berthelemy v. Johnson, 3 B. Monroe 90; and Cabell v. Cabell's Admr., 1 Metcalfe 319, these legislative divorces were held to be valid. Nor does it appear that prior to 1809, any general law prescribing causes for which divorces might be granted had been enacted.

In 1809, however (see Littell's Statute Law of Kentucky, vol. 4, page 19), the legislature adopted an act investing the circuit courts of the state with the power and jurisdiction to decree divorces: "In favor of the husband where his wife shall have voluntarily left his bed and board with the intention of abandonment, for the space of three years, or where she shall have abandoned him and lived in adultery with another man or men, or shall have been condemned for a felony in any court of record within the United States: In favor of a wife, where her husband shall have left her, with the intention of abandonment, for the space of two years; or where he shall have abandoned her and lived in adultery with another woman or other women, or shall have been condemned for a felony in any court of record within the United State, or where his treatment of her is so cruel, barbarous and inhuman as actually to endanger her life."

And further provided that the decree "shall not operate so as to release the offending party, who shall

nevertheless remain subject to all the pains and penalties which the law prescribes against a marriage whilst a former husband or wife is living; nor shall it authorize the injured party again to contract matrimony within two years from the time of pronouncing such final decree.''

The next general law on the subject was an act of 1843 (see Acts 1842-43, page 29), amending the act of 1809, by enlarging the causes for which divorces might be granted and authorizing the courts to decree divorces:

''1st. In favor of the husband, where the wife shall be pregnant by another man, before the marriage, without the husband's knowledge. 2d. Where the wife shall abandon the husband for the space of one year. 3d. Where the wife shall be guilty of adultery. 4th. Where there shall be such malformation as to render sexual intercourse impossible. 5th. In favor of the wife, where the husband shall abandon her, and be guilty of acts of adultery, or where the husband has abandoned her for the space of one year. 6th. Where the husband shall be impotent at the time of marriage. 7th. Where the husband shall habitually behave toward the wife in so cruel and inhuman manner, as to destroy her peace and happiness. 8th. Where the husband shall become an habitual drunkard, and shall be wasting his estate, and no provision shall be made for the support of his wife, but in such case, the court shall exercise a sound and cautious discretion; and alimony may be decreed in such cases.''

This act further provided: ''That in all cases where one party has been divorced, the other party is hereby released from all the obligations of the marriage contract, and restored to all the rights of single persons. That from the rendition of any decree for any of the above causes, the party obtaining said decree, shall be entitled to all the rights and privileges of unmarried persons.''

In 1850 (see Acts of 1849-50, page 54), another act regulating divorces was enacted creating other causes for divorce by the provision, ''That in all cases whatever, where either party to a marriage contract shall have concealed from the other party to such contract, heretofore entered into, or which may hereafter be entered into, at the time of marriage, any contagious and loathsome disease under which he or she may be laboring; or where such marriage contract has been entered

into under duress, by force, or fraud, or where such duress, force or fraud, has been practiced, or may hereafter be practiced, in the procurement of such marriage, as renders such contract, by the rules of law, void *ab initio;* or where either party to such contract of marriage shall have been guilty of such immoral conduct, or is addicted to such obscene or degrading habits as are destructive of the happiness of the parties or either of them; or where such parties to such contract of marriage, heretofore entered into, or which may hereafter be entered into, shall have separated and lived apart, without any communication whatsoever for the space of. five years before the commencement of any suit for a divorce; or where either party to such contract of marriage, heretofore entered into, shall have been guilty of such unbecoming and disrespectful conduct as exposing, unnecessarily, the other to public notoriety and reproach for alleged abandonment in any public newspapers or journals of this state by publication, or by other unnecessary and cruel conduct, endeavored to disgrace the same, it shall be lawful for the judges of the several circuit courts of this Commonwealth, upon bill filed by the party so aggrieved or complaining, alleging such facts, or either of them, as above enumerated, to entertain jurisdiction of the same, and to cause a jury to be empaneled and sworn to try the issue in said cause; and if, thereupon, it shall appear by competent proof, that the allegation or allegations so charged, are true, and the jury so empaneled, shall so find the same in their verdict, the court before whom such suit is pending, shall, thereupon, enter up a decree of divorce upon such verdict.''

In 1851 (see Acts of 1850-51, vol. 1, page 217, and Revised Statutes, vol. 2, p. 17), following the Constitution of 1850, a general law on the subject of divorce and alimony was adopted, providing that: ''The courts having chancery jurisdiction may decree a divorce for any of the following causes.'' The causes set out are, with the exception of some verbal differences, the same as the causes that may be found in the Kentucky Statutes.

It was further provided in this act that: ''No decree of divorce shall authorize or permit the party obtaining it to marry again until one year after the final decree, except where it is herein allowed in favor of both parties; nor shall the party against whom the decree is rendered marry again in less than five years thereafter.''

In 1854 (see Revised Statutes, vol. 2, p. 29), this provision was amended so as to allow the party obtaining a divorce to marry again at any time after the decree, and the party against whom the decree was rendered to marry at any time within one year thereafter.

It was further provided in the act of 1851 (see Revised Statutes, vol. 2, p. 17), that: "Every decree for a divorce may at any time be revoked or annulled by the court rendering it, on the joint application of the parties, and they thereby restored to the condition of husband and wife; but no divorce shall thereafter be granted between them for the same or like cause."

This last section, which, with the exception of some immaterial, verbal differences, is the same as section 2120, of the Kentucky Statutes, has been a part of the body of the law since that time.

In 1873, when the statute law of the state was enacted and put in one body under the title "General Statutes of Kentucky," the causes for which divorces might be granted were set forth substantially as in the act of 1851. (See General Statutes of Kentucky, chap. 52, art. 3, p. 522.) It was, however, provided that "a judgment of divorce authorizes either party to marry again."

In the act of 1873 (see General Statutes, chap. 52, art. 3, sec. 5), there appeared in the statute law of the state for the first time what is now section 2118, of the Kentucky Statutes.

From this compendium of the general divorce laws of the state, as found in the statutes, it will be seen that from time to time the causes for which a divorce might be granted have been enlarged, and that until the act of 1851, a decree of divorce authorized either party, without limitation, to marry. But in act of 1851, the party obtaining the divorce, unless upon a cause allowing a divorce to both parties, could not marry for one year after the decree, nor could the defendant marry within less than five years.

It will also be noticed that the act of 1809 required three years' abandonment to constitute a ground for divorce; while in subsequent acts, and now, one year is sufficient. And that in the act of 1842, the question whether a divorce should be granted should be submitted to a jury.

It is provided in the Kentucky Statutes (sec. 2117) that: "A jury shall not be impaneled in any action for di-

vorce, alimony or maintenance," although before the adoption of this statute in 1893, there was no prohibition against jury trials, the statute merely providing that "the courts having general equity jurisdiction, may grant divorces."

It will further be observed that section 2120, of the Kentucky Statutes, providing that on the joint application of the parties a decree of divorce might be annulled, first made its appearance in the statute law of the state in 1851, and has been a part of the law since that time. But section 2118, of the Kentucky Statutes, was first incorporated into the law in 1873.

It is very clear that section 2120 refers to parties who, after being divorced, remarry, or accomplish the same end by having the divorce proceedings annulled; and also evident that the legislature did not deem this provision broad enough, and accordingly enacted what is now section 2118, and there can be no doubt that the purpose of section 2118 was to place a limitation upon the right of divorce by preventing any party from obtaining a second divorce except for a cause for which a divorce might be granted to both parties, or on the ground of adultery.

The legislature, as we have said, could have failed to provide that a divorce might be granted for any cause, and, if it had not legislated on the subject at all, no divorce could be obtained; or it might, after having allowed divorces for certain causes, have provided that neither party should ever marry again; or that one of them might but the other could not; or have placed any limitation it saw proper upon the right to remarry.

The legislature did not however deem it wise to deny divorces or to prohibit absolutely the remarriage of divorced persons, but was content to say that a party who had obtained a divorce and afterwards married a person other than a former spouse, could not obtain a second divorce except for the cause of living in adultery or for a cause for which a divorce might be granted to both husband and wife.

So that under this section, no person can obtain a second divorce unless upon the ground of adultery, or for the cause for which a divorce may be granted to both parties. The result of this is that if a second unhappy marriage is contracted and the aggrieved party cannot secure a divorce on the ground of adultery, or for a cause

that will authorize a divorce to both parties, the parties must continue as husband and wife until there has been a "living apart without any cohabitation for five consecutive years," at the expiration of which time either may obtain a divorce, as this furnishes cause to both parties.

It follows from what we have said that Mrs. Iring can only obtain a divorce upon the ground that Iring was guilty of adultery, or by "living apart from him without any cohabitation for five consecutive years."

Wherefore, the judgment is affirmed.