RENDERED: OCTOBER 24, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2023-SC-0043-DG

JAY PICARD                                                           APPELLANT

V.
                     ON REVIEW FROM COURT OF APPEALS
                           NO. 2022-CA-0022
                  PULASKI CIRCUIT COURT NO. 17-CI-00222

KATHERINE KNIGHT                                            APPELLEE

## OPINION OF THE COURT BY JUSTICE THOMPSON

## <u>AFFIRMING</u>

Pursuant to Kentucky Rules of Civil Procedure (CR) 68, Jay Picard sought an award of attorney fees and costs in a child support modification matter. The Pulaski Family Court denied Picard's motion and the Court of Appeals affirmed. We conclude Kentucky Revised Statutes (KRS) Chapter 403 generally, and KRS 403.220 specifically, preempt our offer of judgment rule, CR 68, from having any application to family law matters. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Katherine Knight and Picard are the parents of X.C.P. (child). They were never married.

On March 6, 2017, when child was two months old, Knight filed a petition with the family court for custody of child, requesting joint legal custody, equal timesharing, and appropriate child support. On January 7,

2019, an agreed order of child support was entered which obligated Picard to provide child's health insurance and pay $500 a month in child support. This was acknowledged to be a reasonable deviation from the child support guidelines based upon equal timesharing.

The parents' cooperation deteriorated, and a contentious process ensued involving multiple issues. On May 11, 2020, Knight filed a motion for review and modification of child support on the basis that there was an alleged material change in their circumstances. On May 14, 2020, Picard filed a motion, seeking a reduction in his child support obligation and requesting an evidentiary hearing.

Knight and Picard proceeded to request discovery from each other regarding their financial records. Picard produced some financial records but did not respond to all such requests. On October 1, 2020, the family court granted Knight's motion to compel discovery within ten days by an order entered on October 5, 2020.

On October 2, 2020, Picard's counsel emailed Knight's counsel offering to settle and pay $150 in child support a month. Picard's counsel specifically cited rule CR 68.

Knight did not accept this offer. According to Knight, Picard did not produce all of the required discovery materials until October 23, 2020, twenty-one days after the offer was made and eleven days after it expired.

Following an evidentiary hearing, on June 9, 2021, the family court resolved five motions with findings of fact, conclusions of law and an order. As

2

to the motion to modify child support, the family court concluded that the parties should retain joint custody and equal timesharing, and "neither party shall pay child support as their incomes equal out." The family court made this order effective as of May 14, 2020, and ordered Knight to repay Picard $6,000 in overpayments. The family court resolved all other outstanding issues, including denying Knight's motion for reimbursement of attorneys' fees pursuant to KRS 403.340.[1]

On July 1, 2021, Picard filed a motion for CR 68 costs consisting primarily of attorney fees, arguing that he was entitled to be reimbursed pursuant to CR 68(3) because Knight "ran up" his discovery costs after he offered her a settlement, and she received less in child support than his offer. Picard attached an affidavit from his attorney indicating that no less than $15,000 of attorney fees and costs were incurred after his offer of settlement.

On October 15, 2021, the family court denied Picard's motion for attorney fees, concluding that in family law matters KRS 403.220 governs whether awarding attorney fees is appropriate, and such an award would be inequitable where the parties had modest, roughly equal incomes. The family court also concluded that even if KRS 403.220 were not controlling, Picard's offer of judgment only covered the issue of child support while there were other issues to be resolved. The family court also stated that CR 68 applied to

---

[1] Knight proceeded under KRS 403.340(7), which was subsequently renumbered as KRS 403.340(6); it provides "[a]ttorney fees and costs shall be assessed against a party seeking modification if the court finds that the modification action is vexatious and constitutes harassment."

matters of law and not equity and applying CR 68 to a family court matter would have a chilling effect on parties seeking appropriate resolutions.

The Court of Appeals affirmed on alternative grounds. We accepted discretionary review and set the matter for oral argument.

During oral argument, Picard agreed CR 68 should not be applied to resolutions of child custody matters but argued that family law practitioners need CR 68 as an "arrow in their quiver" to encourage settlement of financial claims in domestic relations actions. He rejected that CR 11 is sufficient to prevent frivolous filings.

## II. ANALYSIS

Picard argues that the Court of Appeals erred when it affirmed the family court's decision not to grant him a CR 68(3) attorney fee hearing where he properly qualified for attorney fees and costs pursuant to CR 68.

"Determining the correct reading of a statute is a question of law that we review de novo without affording deference to lower courts." *McCann v. Sullivan Univ. Sys., Inc.*, 528 S.W.3d 331, 333 (Ky. 2017). This same standard applies for interpreting our civil rules. *Smith v. McCoy*, 635 S.W.3d 811, 814 (Ky. 2021).

Therefore, we give no deference to either the family court's determination that CR 68 is preempted from any application in family law matters or to the Court of Appeals' affirmance based on its interpretation that CR 68 does not permit legal fees as costs here because Knight was not a prevailing party.

We conclude that CR 68 is preempted by KRS Chapter 403, and attorney fees and costs cannot be awarded in family court proceedings pursuant to CR

4

68. KRS 403.220 provides the primary basis under Chapter 403 for the award of attorney fees and costs and, because CR 68 is inconsistent with it, KRS 403.220 controls over CR 68 regarding how attorney fees and costs can be awarded. We do not directly address the Court of Appeals' basis for affirming as we have no need to render an advisory opinion on who would generally qualify as a prevailing party under CR 68.

**A. A General Comparison of KRS 403.220 and CR 68.**

KRS 403.220, which applies in all family law matters contained in KRS Chapter 403, states in relevant part as follows:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

CR 68, which generally applies in civil matters, provides as follows:

> (1) At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property, or to the effect specified in his offer, with costs then accrued. The offer may be conditioned upon the party's failure in his defense. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance, together with the proof of service thereof, and thereupon judgment shall be rendered accordingly, except when the offer is one conditioned upon failure in defense, in which case the judgment shall be rendered when the defense has failed.
>
> (2) When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before the trial if it is served within a reasonable time not less than 10 days prior to the

commencement of hearings to determine the amount or extent of liability.

(3) An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer.

In typical civil actions, a plaintiff seeks to win an award of damages for some wrong committed by the defendant. In contrast, our family law matters are non-adversarial, the parties are referred to as petitioner and respondent, and the goal is an equitable resolution for both parties.

A brief history of our prior fault-based divorce system, when compared with our current no-fault system further highlights why a rule intended for typical civil actions is a poor fit when applied to family law matters.

## 1. Kentucky's Prior Fault-Based Divorce System

While dissolution actions have always been distinct from other civil actions, prior to the 1972 enactment of KRS 403.110 *et seq.*, Kentucky had a long history of having only fault-based divorce, meaning party seeking a divorce had to prove wrongdoing on the part of the other party to obtain a divorce. *See generally* KRS 403.020 (repealed in 1972); Ky. St. § 2117 (repealed by the enactment of the KRS and recodified as KRS 403.020 in 1952); and *Iring v. Iring*, 188 Ky. 65, 221 S.W. 219 (1920).

Under KRS 403.020 an "innocent" spouse could obtain a divorce by proving the other party was not fulfilling his/her expected marital role in one of a variety of ways, including that he/she: abandoned the other spouse, was

6

convicted of a felony, was living in adultery, was a habitual drunk, contracted an infection with "any loathsome disease[,]" acted with cruelty towards the other spouse, or had inflicted beatings on the other spouse indicating "an outrageous temper[.]" The husband committing adultery was not a ground for a wife to divorce her husband, but a husband could divorce his wife if she committed adultery or engaged in "such lewd, lascivious behavior on her part as proves her to be unchaste, without actual proof of an act of adultery." KRS 403.020(4)(c). Having to provide proof of such wrongdoing to qualify for a divorce was problematic as it led to contentious public allegations of embarrassing behavior.

Additionally, under the previous system, establishing fault was a basis for the determination of whether or how much alimony would be awarded, and whether the wife would be considered "fit" to raise children of tender years. "The general rule [was] that permanent alimony [would] not be awarded to a wife when her husband [was] granted a divorce because of her fault or misconduct." *Coleman v. Coleman,* 269 S.W.2d 730, 738 (Ky. 1954). However, if the husband caused the break-up of the marriage, the wife was entitled to the husband's support "to make an equivalent of what she is denied by his fault." *Muir v. Muir,* 133 Ky. 125, 92 S.W. 314, 316 (1906). The husband could be awarded the right to the care and custody of children based on the wife's moral unfitness because she was "unchaste" and to regain custody she would have to prove that she had changed her behavior; similarly, an ex-wife could later be deprived of custody of the children based on her promiscuity after the divorce.

7

This resulted in courts having to take evidence as to a woman's alleged promiscuity both prior to and after the divorce.

### 2. Kentucky's Current No Fault Dissolution System

Kentucky's advance to no fault dissolution more than fifty years ago has removed family law from typical civil actions and has many benefits for those involved in the process. Under this system, no one is at fault for the irretrievable breakdown of the marriage and existing defenses to divorce are abolished. KRS 403.150. Marital property is to be divided "without regard to marital misconduct in just proportions considering all relevant factors[.]" KRS 403.190. An award of maintenance is designed to provide resources for a party who "lacks sufficient property . . . to provide for his reasonable needs; and . . . [i]s unable to support himself through appropriate employment[.]" KRS 403.200(1). It can also give a party "[t]he time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment[.]" KRS 403.200(2)(b).

Lessening the acrimony between the couple and switching the focus of the proceedings from assigning blame to the remedial goals of fairly allocating property, ensuring the well-being of the former spouses, and providing for suitable shared parenting and sufficient child support, is certainly more conducive to amicable relations generally, and is in the best interest of any children being jointly parented.

Like other family law matters, "[c]ustody disputes have long been recognized as not fitting neatly into our primarily adversarial system of dispute

resolution." *Morgan v. Getter*, 441 S.W.3d 94, 103 (Ky. 2014). Our Courts are charged with determining the best interest of the children and conduct by parents is only relevant as to how it may affect their ability to parent. KRS 403.270(2). *See Moore v. Moore*, 577 S.W.2d 613, 614 (Ky. 1979) (explaining a parent is only unfit to have custody based on sexual misconduct if there is "proof that the sexual misconduct affects the relationship of the parent to the child; otherwise, the evidence of such misconduct is irrelevant and should not be admitted into evidence"); KRS 403.320(1) (providing a presumption for reasonable visitation to the parent not awarded custody or shared parenting time).

Timesharing and child support go hand-in-hand as the amount of timesharing impacts what child support award is appropriate. Child support is generally calculated based on the parents' combined incomes, which can be adjusted by the shared parenting time credit. KRS 403.212; KRS 403.211(3); KRS 403.2122.

Given the different purposes between our adversarial system generally, and the resolution of family law matters, it is hardly surprising that certain civil rules may provide an imperfect fit when it comes to family law matters, especially in the no-fault era. Dissolution and other family law matters are simply very different types of proceedings from other civil cases.

**B. CR 68 is Generally Inconsistent with the No-Fault Dissolution System, the Purposes of KRS Chapter 403 Generally, and KRS 403.220 Specifically.**

Various statutory schemes may exclude inconsistent rules from being applicable. This can be done in three ways: (1) by implication, when the statutory scheme is set up as "special statutory proceeding" which by its very nature excludes inconsistent rules;[2] (2) directly by the enactment of a specific statute which preempts inconsistent rules;[3] or (3) simply as a matter of statutory construction in which substantive statutory law must prevail over any inconsistent procedural rules.[4] We need not resolve the issue of whether Chapter KRS 403 constitutes a special statutory provision which exempts inconsistent civil rules, because the two other applicable bases for excluding inconsistent rules from applying are present here.

KRS 403.130(1) states: "The Rules of Civil Procedure apply to all proceedings under this chapter, *except as otherwise provided in this chapter.*" (Emphasis added). *See* Kentucky Family Court Rules of Procedure and Practice

---

[2] "Special statutory proceedings provide comprehensive procedures which are complete within themselves." *McCann*, 528 S.W.3d at 333-34. CR 1(2) specifically exempts our civil rules from application to "special statutory proceedings, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules."

[3] *See, e.g., Pyro Mining Co. v. Kentucky Com'n on Human Rights*, 678 S.W.2d 393, 394-96 (Ky. 1984) (determining statute, which contained specific language excluding inconsistent civil rules, meant that the Kentucky Commission on Human Rights could not entertain class action suits).

[4] *See Richey v. Richey*, 389 S.W.2d 914, 919 (Ky. 1965).

(FCRPP) 1(5) which provides similar language.[5] This statutory provision must be interpreted to mean that civil rules are preempted when they are inconsistent with the enacted statutory provisions. Additionally, an examination of the purposes of KRS Chapter 403 and the wording of its general provision relating to an award of attorney fees and costs, supports an interpretation that CR 68 is preempted as inconsistent with such substantive statutory law.

The substantive statutory law includes KRS 403.110, which sets out the purposes of KRS Chapter 403. KRS 403.110 provides as follows:

> This chapter shall be liberally construed and applied to promote its underlying purposes, which are to:
>
> (1) Strengthen and preserve the integrity of marriage and safeguard family relationships;
>
> (2) Promote the amicable settlement of disputes that have arisen between parties to a marriage;
>
> (3) Mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage;
>
> (4) Make reasonable provision for spouse and minor children during and after litigation; and
>
> (5) Make the law of legal dissolution of marriage effective for dealing with the realities of matrimonial experience by making irretrievable breakdown of the marriage relationship the sole basis for its dissolution.

---

[5] FCRPP 1(5): "The Kentucky Rules of Civil Procedure, Rules of Criminal Procedure, Rules of Appellate Procedure, and Rules of Evidence shall apply to family law cases *to the extent that they are not inconsistent with these rules.*" (Emphasis added).

In examining KRS 403.220, it can be observed that by considering the parties' resources in dividing attorney fees and costs, this provision promotes two purposes set out KRS 403.110. First, KRS 403.220 serves the goal of KRS 403.110(3) by equalizing access to dissolution attorneys to mitigate a potential harm to spouses and children in the dissolution process so that the division of assets and resolution of custody, timesharing and child support issues will not be determined by who can afford to pay attorney fees, but by what is fair to the parties and in the best interest of the children. Second, KRS 403.220 serves the goal of KRS 403.110(4) as the provision of attorney fees prevents such expense from leaving the poorer spouse unable to meet that spouse's needs or unable to provide for the minor children after the litigation concludes.

As explained in *Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014):

> The purpose of the fee-shifting statute . . . is simply to ensure the fairness of domestic relations proceedings: to prevent one party to a divorce action from controlling the outcome solely because he or she is in a position of financial superiority and to equalize the status of the parties to a dissolution proceeding in an effort to eliminate the inequities resulting from the termination of the relationship. To that end, if the parties' resources are disparate, the trial court enjoys a broad discretion under the statute to allocate costs and award fees, including wide latitude to sanction or discourage conduct and tactics which waste the court's and attorneys' time.

(Internal citations, quotation marks, and ellipsis omitted). "While financial disparity is no longer a threshold requirement which must be met in order for a trial court to award attorney's fees, we note that the financial disparity is still a viable factor for trial courts to consider in following the statute and looking at

12

the parties' total financial picture." *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018).

KRS 403.220 provides for fairness in the division of attorney fees based largely on financial resources. Unlike a typical civil action where one party may be at fault and thereby liable for damages, no one is at fault in seeking a dissolution of a marriage and the equitable division of assets, or in settling matters relating to custody, timesharing, and child support. In contrast, CR 68 appears to encourage settlement by providing a financial incentive to settle.

"The determination of attorney fees and court costs [pursuant to KRS 403.220] is a matter delegated entirely to the discretion of the Circuit Court; there is nothing mandatory about it." *Moss v. Moss*, 639 S.W.2d 370, 373 (Ky. App. 1982). As explained in *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990):

> The amount of an award of attorney's fees is committed to the sound discretion of the trial court with good reason. That court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.

*See Neidlinger v. Neidlinger*, 52 S.W.3d 513, 519 (Ky. 2001) (overruled on other grounds by *Smith*, 556 S.W.3d at 556) ("whether to make such an assignment [of attorney fees and costs] and, if so, the amount to be assigned is within the discretion of the trial judge").

In comparison, CR 68 does not provide the trial court with any discretion. "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree *must pay the costs incurred* after the making of the offer." CR 68(3).

13

**C. Remaining Issues and Concerns**

Our rejection of CR 68's application to family law matters does not mean that there is no recourse if a party engages in inappropriate tactics or frivolous filings. There are still options for suitable redress through a motion for attorney fees and costs pursuant to KRS 403.220 and/or a request for CR 11 sanctions, although we do not intimate that such sanctions would have been appropriate here.

An order to pay an appropriate sanction of reasonable expenses including reasonable attorney fees incurred for responding to a specific frivolous motion pursuant to CR 11, does not run afoul of KRS 403.220 as it is discretionary and narrowly tailored to fulfill the specific purposes of that rule.

CR 11 provides in relevant part that:

> The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Given our resolution that CR 68 is excluded from application to family law matters, we need not resolve whether the costs awarded under CR 68 could ever include attorney fees, or whether a child support judgment where Knight

14

received nothing is a "judgment finally obtained by the offeree" qualifying Picard for costs because this judgment "is not more favorable" than his offer. CR 68(3). These issues are irrelevant as CR 68 has simply no application here. Additionally, Picard's argument that the interpretation of the similar Federal Rules of Civil Procedure (Fed. Rules Civ. Proc.) 68, should be persuasive to award him attorney fees and costs for "prevailing" in this child support matter is particularly problematic where this federal rule never has been applied to family law matters.

### III. CONCLUSION

In resolving family law matters, we ought not have winners and losers. Requiring judges to make mandatory CR 68 awards would put them in an untenable position of appearing to take sides in what is supposed to be an equitable and fair resolution to the unwinding of a marriage in dividing marital assets and providing for children's best interests. Such a requirement would be at odds with Kentucky's commitment to no-fault proceedings.

Instead, the rules we apply in family law matters should foster collegiality and friendliness between opposing attorneys and spouses, especially when the parties will be engaging in joint parenting post-dissolution as the parties being amicable is in the best interest of the children. *See* KRS 403.110(1) and (2). Protracted and contentious litigation which depletes the marital estate is not in anyone's best interest and, appropriately, KRS 403.220 and CR 11 provide the potential for discretionary redress.

15

Certainly, sometimes the settlement of financial claims in family law matters may be reasonable and beneficial to all involved. However, such financial settlements ought not be accomplished through the threat that non-settlement will require the payment of CR 68 costs.

Accordingly, we affirm.

All sitting. VanMeter, C.J.; Bisig, Conley, Lambert, JJ., concur. Nickell, J., concurs in result only by separate opinion in which Keller, J., joins.

NICKELL, J., CONCURRING IN RESULT ONLY:  I concur in result only. While I agree with much of the majority opinion, in my estimation, the inapplicability of CR 68 to domestic relations proceedings may be squarely established by reliance upon the longstanding proposition that a litigant cannot utilize the procedural offer of judgment rule to receive costs and fees which are otherwise unavailable under the controlling substantive law. *Marek v. Chesny*, 473 U.S. 1, 9 (1985).

When a dispute arises concerning the proper construction of a Civil Rule and Kentucky precedent is unclear, we typically look to the corresponding Federal Rule for guidance. *Id.* However, Federal Rule of Civil Procedure 68, upon which CR 68 is closely modeled, does not apply to family law matters because "the federal courts do not hear domestic relations actions under the domestic relations exception to federal diversity jurisdiction." *Mohr v. Mohr*, 573 S.E.2d 729, 731 (N.C. Ct. App. 2002) (citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) and *McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999)).

16

Thus, the scope of the rule, as originally drafted and conceived, did not contemplate application to the unique setting of domestic relations law. The courts of our sister jurisdictions have broadly recognized this structural incongruity and refused to apply the offer of judgment rule to domestic relations proceedings. *See e.g., Cox v. Cox*, 382 P.3d 288 (Haw. 2016); *Cummings v. Cummings*, 292 S.W.3d 819, 824 (Ark. Ct. App. 2009); *Harbit v. Harbit*, 3 So.3d 156, 162 (Miss. Ct. App. 2009); *Mohr*, 573 S.E.2d at 731; *In re Marriage of Saunders*, 975 P.2d 927, 929-30 (Or. Ct. App. 1999); *In re Marriage of Marshall*, 781 P.2d 177, 181 (Colo. Ct. App. 1989), *Hessel v. Hessel*, 424 N.W.2d 59, 62 (Mich. Ct. App. 1988); *Leeming v. Leeming*, 490 P.2d 342, 344 (Nev. 1971). Other states have specifically exempted domestic relations proceedings from the offer of judgment rule by statute or amendment. *See* Florida Statutes § 45.061(4); South Carolina Rules of Civil Procedure 68; 1 Maureen McBrien & Patricia A. Kindregan, *Mass. Prac., Family Law & Prac.* § 9:15 n.3 (4th ed.) (noting "Mass. R. Civ. P. 68 has been deleted from the domestic relations rules as being inappropriate in domestic relations").

As the majority correctly holds, the intent and purpose of domestic relations law in Kentucky is similarly incompatible with the offer of judgment rule. However, I do not perceive this conclusion to necessarily follow from the law's development over time. In my view, the award of attorney fees and costs in domestic relations action is simply a matter of substantive law which a procedural rule such as CR 68 cannot override or circumscribe. *See Perry*, 652 S.W.2d at 659. The advent of no-fault divorce, while pertinent, is not

17

determinative because the substantive family law of Kentucky previously recognized the equitable necessity of accounting for a party's financial status relative to the award of fees and costs even where fault was assigned. *Smith v. Smith*, 297 Ky. 395, 180 S.W.2d 275, 277 (1944) ("[A] mere showing [of] fault is not sufficient; it must additionally appear that she has ample estate from which to pay."). Thus, I discern no change in Kentucky law relative to the specifics of the present dispute.

Under CR 68, "[a] party cannot include in the offer reference to attorney's fees and thereby seek recovery of such costs accrued when they are not otherwise recoverable." 7 David V. Kramer, Ky. Prac. R. Civ. Proc. Ann. Rule 68 (2024). Indeed, "the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Marek*, 473 U.S. at 9. In the present matter, the controlling substantive statute is KRS 403.220 which specifically conditions the award of attorney fees and costs upon a consideration of the parties' financial resources. *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). Simply put, Picard cannot rely upon the procedural offer of judgment rule to obtain an award of costs and fees which he could not otherwise obtain under the substantive provisions of KRS 403.220. I would affirm the lower courts on this limited basis. Therefore, I concur in result only.

Keller, J., joins.

18

COUNSEL FOR APPELLANT:

Hillary Ann Hunt
William D. Tingley


COUNSEL FOR APPELLEE:

Andre Regard